16405

CASON v. GIBSON *ET AL.*

(61 S. E. (2d) 58)

*Messrs. Bowen & Bryson,* of Greenville, *for Appellant,*

*Messrs. Wyche, Burgess & Wofford* and *Love, Thornton & Blythe* and *William I. Bouton,* all of Greenville, *for Respondents,*

*Messrs. Bowen & Bryson,* of Greenville, *for Appellant, in reply.*

September 6, 1950.

STUKES, Justice.

Minnie P. Cochran owned a tract of land which was near but is now, since 1947, within the limits of the City of Greenville. In 1937 she procured to be made by surveyors a subdivision of a portion of it and lots and streets were designated and mapped. The plat was recorded in 1938 and shows lot No. 47 facing northwest on an unnamed street which intersected another unnamed street at the corner of the lot, thus making it a corner lot with street frontage of 78.8 feet, running back 125.9 feet on the street which constituted the southwest boundary of the lot. The street last referred to is here in controversy. It was shown on the recorded map as being of a uniform width of 40 feet, meandered in a generally southerly direction and intersected West Augusta Place Street which was 50 feet in width. The subdivision map showed an irregular block composed of eleven lots, bounded on all sides by streets, of which lot No. 47 was the northwest corner.

By deed dated June 13, 1946, Mrs. Cochran conveyed lot No. 47 to Joseph H. Parrott and Mary C. Parrott describing it by the plat which had been recorded in 1938 and reference was had to the book and page of record and the streets were referred to as boundaries. On Sept. 18, 1946, the Parrotts conveyed by the same description to H. C. Smith and C. S. Fox and the latter two named conveyed to plaintiff by deed dated Dec. 31, 1946, using the same description.

Fox testified for plaintiff at the trial that he was the agent of Mrs. Cochran and as such made the sale of lot No. 47 to the Parrotts and in the negotiation he represented to them that the lot was a corner lot and in that connection showed them the 1937 recorded plat. Subsequently the witness and his partner, Smith, purchased the lot on their own account from the Parrotts and afterward sold it to the plaintiff, at that time showing him the recorded plat and representing to him that he was buying a corner lot. The witness had no in-

formation concerning the street in question except that obtained from the recorded plat and he had talked to Mrs. Cochran, his principal, about the lot sale and also to her son, Dan W. Cochran.

The latter testified that as an executor of his father's will and as agent for his mother he engaged the surveyor and attended to the recording of the 1937 plat which did not include all of his mother's adjacent land, omitting five acres lying to the west of the platted portion. There has never been any acceptance of the strip of land, constituting the street in controversy, by Greenville County or City and it has not been used by the public. In 1949 witness' mother had a new plat made which took in land to the west of that originally mapped, eliminated the contended street and substituted another farther west. The witness employed a Mr. Ashmore to grade the streets shown on the original plat but the street in controversy was not graded because of the excessive cost and on that account he, as his mother's agent, decided to abandon it.

The defendants, who are now respondents, separately purchased from Mrs. Cochran in September and October 1949 three lots numbered, respectively, 49, 50 and 51 per the 1949 plat and each of the lots contains a portion of the street which bounded plaintiff's lot on the west, according to the 1938 plat by which he purchased. Alleging that two of the respondents had commenced the erection of buildings on their lots, plaintiff brought this action in October 1949 to enjoin the obstruction of the street in controversy. There is no question of notice to respondents of plaintiff's claim of right in the street at the time of their respective purchases and the above dates show the promptness of his legal action.

The defendants answered separately. The answers included denials and other defenses: (1) that if there was a dedication of the street as such, it was revoked by Mrs. Cochran and abandoned by her and by plaintiff before public acceptance or use; (2) that plaintiff is estopped by his acquiescence

in the revocation; and (3) that the street is not essentially necessary to the use and enjoyment of plaintiff's property. The case was tried by the court which heard the evidence without the intervention of master or jury and rendered judgment for the defendants, whence this appeal.

A case close to this in facts is *Marshall v. Columbia etc. Street Ry. Co.,* 73 S. C. 241, 53 S. E. 417, 421. Defendant there owned a large acreage just north of Columbia which was platted for the purpose of laying out the town of Eau Claire. At and including the intersection of two principal streets about four acres were designated on the map as the "Circle". Plaintiff purchased large abutting lots which were described by reference to the plat and the "Circle" was given as a boundary. Defendant also orally represented to plaintiff that the "Circle" which bounded her lots had been dedicated for public purposes and would be kept open, upon which plaintiff relied. Afterward defendant altered its plan and divided the area of the "Circle", except the street intersection, into lots per a new plat and they were sold to various purchasers with notice of plaintiff's contention, and they were made co-defendants in the action. The court concluded that the seller had dedicated the "Circle" to public uses and that the plaintiff, having bought in reference thereto, had an easement in the "Circle" area and none of it could be sold as lots to others who had notice. The judgment was effectuated by permanent injunction against all of the defendants. This court said in affirming the judgment that, quoting, "Even if the 'Circle' was not dedicated so as to confer rights that could be enforced by the public, nevertheless, if the company represented to the plaintiff that the 'Circle' would be kept open, and thereby induced the plaintiff to purchase her lots, such representations would be binding upon the defendant."

The facts of the *Marshall case* came again before the court in *Diseker v. Eau Claire Land & Improvement Co.,* 86 S. C. 281, 68 S. E. 529. The defendant appears to have been

the successor in title of the corporate defendant in the *Marshall case* and it conveyed to plaintiff lots which had been carved from the "Circle". Plaintiff sued upon the covenant of warranty contained in his deed and alleged that the property had been formerly dedicated to the use of the citizens of Eau Claire for the purpose of establishing a park or public place which constituted an easement in the public. The court affirmed nonsuit upon the ground that plaintiff had not been evicted and for that reason could not maintain an action for breach of warranty. It was carefully said that the rights of the plaintiff in the *Marshall case* were not involved in the action then in hand, thus not impinging upon the authority of it.

Finally, the facts of the *Marshall case* were presented again in *Safety Building & Loan Co. v. Lyles*, 131 S. C. 542, 128 S. E. 724. Plaintiff had become the owner of a lot carved from the "Circle" and bargained to sell it to Lyles who refused to comply with his contract upon the ground that it was encumbered by an easement in favor of the representatives of Mrs. Marshall, then deceased, and in favor of the town of Eau Claire and the public, or of one or more of them. The town and the legatees, devisees and heirs at law of Mrs. Marshall were made defendants. Two daughters of Mrs. Marshall and the town of Eau Claire defaulted. Two granddaughters of Mrs. Marshall filed answers in which they alleged that the real estate of which their mother died seized had been sold in aid of assets and that they no longer had any interest of substantial nature in the "Circle" of which they knew, but they submitted their rights to the protection of the court. The principal defendant, Lyles, denied the conclusions of the complaint, particularly that the easement or right acquired by Mrs. Marshall was merely in gross and that there had been no dedication. The brief judgment of the trial court was adopted without opinion by this court. It was held that there was no completed dedication of the "Circle" to the public because the latter was not a party

which, we add, is unquestionable under the authorities, in view of the absence of acceptance or user. *State v. Carver,* 5 Strob. 217, *Chafee v. City of Aiken,* 57 S. C. 507, 35 S. E. 800; 16 Am. Jur. 377 *et seq.,* Dedication, Sec. 30 *et seq.* It was further pointed out that the plat by which Mrs. Marshall purchased was made in 1897 and Eau Claire was not incorporated until 1899 and the town had since been levying and collecting taxes on the lots which comprised the original area of the "Circle". The latter was never opened and graded; on the contrary, after the plat was altered to provide a right-angle intersection of the streets the latter were graded and have since been maintained as such by the town. It was said that in the light of these facts the public could not require adherence to the original plat or that the "Circle" be kept open. The court then undertook to determine the nature of the right acquired by Mrs. Marshall and concluded that it was an easement in gross and died with her, this principally for the reason that the easement was not appurtenant to the lots purchased by Mrs. Marshall and the enjoyment of them by her was not dependent upon the continuance of the "Circle". It will be noted that it does not appear that the Marshall lots were reduced from the status of corner lots to inside lots, which is an important fact of the case at bar. However, it does not appear that the right originally acquired by Mrs. Marshall was defended in this action. Indeed, it is not clear from the report of the case that the owner or owners of her former lots was or were included in the suit; on the contrary, apparently not. Under these circumstances we do not think that the authority of the holding in Mrs. Marshall's case, *supra,* was weakened.

Moreover, it is clear from a careful consideration of this last of the Eau Claire "Circle" cases brought here by appeal that the public nature of the area involved was abandoned by common consent. The subsequently incorporated town never accepted it and the successor of the former owner, finally with the virtual consent of all concerned, revoked the

offer of dedication, divided and sold the property as lots without ever a firm objection of anyone except Mrs. Marshall, who successfully asserted her right in her lifetime. After her death apparently no one seriously opposed the change. It should be added that the nature of the originally intended "public use" was uncertain. In some of the related cases it was said that the purpose included the donation of the center of the "Circle" for occupancy by a church or by a tourist hotel. This further distinguishes the last of this series of cases from that at bar for here there is no uncertainty; the presently disputed area was mapped as and for a street and the public purpose and convenience to an abutting lot owner are definite and undoubted. The decision of the trial court deprives appellant of the obvious advantages of a corner lot, and that is what he bought.

A very valuable authority upon the subject of easements and rights-of-way by necessity is *Brasington v. Williams,* 143 S. C. 223, 141 S. E. 375, which, however, is mistakenly relied upon by respondents because that is not the subject of this case. The right of appellant here does not arise from necessity. It flows from the deed and plat of the former owner to appellant's predecessors in title and, as is uniformly held, equity and good conscience require its vindication and protection. Many courts base the right of the grantee or his assigns, in the circumstances present here, upon the theory of implied grant or covenant; more, probably, upon the ground of equitable estoppel and some upon a combination of these concepts. Hence the following conclusion of a textwriter : "If a grantor in conveying land bounds it on a street, he and his heirs are estopped to deny that there is such a way or street, as such description is an implied covenant on the part of the grantor, of the existence of such way or street, and of the right of the grantee to its use." 10 R. C. L., p. 714.

*Town of Estill v. Clarke,* 179 S. C. 359, 184 S. E. 89, 90, contains the following : "Exception 5 imputes error to the trial judge for having refused to charge the jury, based on

the holding of the North Carolina Supreme Court in the case of *Collins v. Asheville Land Co.,* 128 N. C. 563, 39 S. E. 21, 83 Am. St. Rep. 720, the following request: 'Where an improvement company laid off lands into numbered city lots and streets, making a plat thereof, and sold lots marked and numbered on the plat, with reference thereto in the deeds, such acts constitute an irrevocable dedication of the streets.' We have made a careful examination of the record, and are satisfied that the trial judge did not err in refusing the above charge. It is correct statement of the law, but would have tended to be misleading." This was disregarded as dictum by the trial court in the consideration of this case. However, reference to the cited North Carolina case shows its relevancy to this. It applies what is known as the "broad" or "unity" rule in such cases and goes further than is necessary here or was necessary in our latest decision on the subject, which will be next cited.

Since the trial of this case in the lower court, *Billings et al. v. McDaniel,* was filed on July 14, 1950, S. C., 60 S. E. (2d) 592. In it the broad rule was quoted from *Cook v. Totten,* 49 W. Va. 177, 38 S. E. 491, 87 Am. St. Rep. 792. The rule and its modifications (in some jurisdictions) are stated at page 612 of the exhaustive annotation in 7 A. L. R. (2d), beginning at page 607, which follows report of the Virginia case of *Lindsay v. James,* 188 Va. 646, 51 S. E. (2d) 326, 7 A. L. R. (2d) 597, opinion by Chief Justice Hudgins. Cases from many jurisdictions are collected in the annotation and it appears that universally where a conveyance of realty described the property sold by reference to a plat upon which streets, alleys, squares and parks are shown, an easement therein is generally implied for the benefit of such lots as actually abut on such streets, alleys and parks even though they are dedicated to public use, and the particular subject of the cited annotation is whether such a conveyance creates in the lot owner a right to use and enjoy such streets, etc., shown on the plat which do not abut the

property conveyed, and affirmative answer to that is the "broad" rule. We do not here consider that further question and it was not decided in the *Billings case, supra,* because the facts did not go that far there, or here.

There is an annotation of value in L. R. A., 1917A, page 1123, which demonstrates by the cited authorities that the private easement of the lot purchaser in such platted streets, etc., is distinct from and will survive the destruction of the public easement. It is also said upon the authority of numerous cited cases in the note in 150 A. L. R. at p. 652, applicable to a case of dedication by plat accompanying conveyance, as here, subsequent acceptance and afterward abandonment or vacation by the public, as follows: "Where lots in a subdivision are sold by reference to a map or plat upon which ways are shown which are or become public streets or highways, the private easement which arises upon such a sale survives the vacation, abandonment, or closing of the street or highway by the public."

All of this points to the error of the trial court in this case. It was erroneously decided as if appellant's right to the use of the abutting streets were dependent upon a dedication by the owner which was accepted by public authority and used by the public, which it is not, as is further shown by the following text quotations. "As between the owner, who has conveyed lots according to a plat, and his grantee or grantees, the dedication is complete when the conveyance is made, even though the street is not accepted by the public authorities." 16 Am. Jur. 379, sec. 31. "It follows that the dedication can be revoked prior to acceptance, provided the claims of grantees are extinguished, or they all consent; but the grantees have the right to insist that the offer of dedication be held open even though there was no acceptance by the city, and the dedicator's sale of the property will not destroy that right." 26 C. J. S., Dedication, § 58, pp. 146, 147. "Persons owning lots fronting on or adjacent to property dedicated as public parks or

squares, or streets, highways, and the like, have such special property interests as entitle them to maintain a suit for the enforcement and preservation of the use of the property as such. This right is not affected by the fact that the dedication has never been accepted by the municipal authorities." 26 C. J. S., Dedication, § 71, p. 161.

After judgment below in their favor for reasons that we have found untenable, respondents filed sustaining grounds, Sup. Ct. Rule 4, sec. 7, which allege abandonment by appellant of his easement in the street and counter-estoppel of him. But these contentions were not argued in the brief and need not be particularly considered. We add, however, that the facts in evidence do not at all support them.

The judgment is reversed and the case remanded to the trial court for issuance of the permanent injunction to which appellant is entitled under the foregoing opinion.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.