659 S.E.2d 151

**INLET HARBOUR, a South Carolina General Partnership, Respondent**

v.

**The SOUTH CAROLINA DEPARTMENT OF PARKS, RECREATION AND TOURISM, Appellant,**

v.

**Inlet Harbour Property Owners Association, Inc., Respondent.**

No. 26459.

Supreme Court of South Carolina.

Heard Feb. 7, 2008.

Decided March 17, 2008.

Mark Andrew Nappier, of Joye, Nappier & Risher, of Murrells Inlet, James B. Richardson, Jr., of Columbia, and Ezizze Davis Foxworth, of Loris, for Appellant.

Dominic A. Starr, of Nelson Mullins Riley & Scarborough, of Myrtle Beach, for Respondents.

Chief Justice TOAL:

This appeal arises out of a dispute involving road access to oceanfront property in Murrells Inlet, South Carolina. The crux of this matter is the scope of an easement over a private road implied in a deed from Respondent Inlet Harbour, a South Carolina general partnership, to the South Carolina Department of Parks, Recreation and Tourism. The trial court held that the implied easement was limited in scope and the Department of Parks, Recreation and Tourism appealed. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

The circumstances giving rise to this case are best explained by way of historical narrative. In the early 1970's, a group of investors formed the Inlet Harbour general partnership and acquired a large tract of land on the peninsula forming the northern border of the entrance to the coastal waterway known as Murrells Inlet. The partnership made this acquisition for the purpose of developing this area into a residential subdivision.

At the time the partnership purchased this land, it was aware that the United States Army Corps of Engineers was preparing a substantial engineering project to solve navigability problems in the Murrells Inlet waterway. This project, referred to as the "Murrells Inlet Navigability Project," called for the construction of jetties at the north and south entrances to the inlet and for routine dredging of the inlet. The project was to be funded with both state and federal resources, and the South Carolina Department of Parks, Recreation and Tourism ("the Department") was charged with acquiring the land necessary for the project. The Department was to acquire the necessary property and transfer that property to the Corps of Engineers.

The land at issue in this case was acquired for the construction and maintenance of the jetty at the inlet's north entrance. Inlet Harbour sold a first parcel of land to the Department in March 1976. This rather large tract (approximately 4.2 acres)

was located very near the end of the peninsula. The tract bordered the ocean on the east and undeveloped property on the west and south. Undeveloped residential lots bordered the tract on the north, and Inlet Harbour Drive—the yet-to-be-developed thoroughfare through the development—abutted portions of the tract's north and west borders. In addition to describing the property by metes and bounds, the deed to the Department referenced a plat recorded roughly two weeks earlier. This plat showed the 4.2–acre tract, the adjacent undeveloped lots, and the future site of Inlet Harbour Drive. The deed to the Department additionally contained an express easement to use Inlet Harbour Drive to access the property "for the sole purpose of constructing and maintaining the north sand dike and jetty for the Murrells Inlet, South Carolina, Navigation Project."

Some time after this transfer, the Corps of Engineers directed the Department to acquire a second tract of land from Inlet Harbour. The Corps required this second purchase in the event that it proved necessary to construct a "deflector dike" to maintain the project. The Department believed this second acquisition to be unnecessary, but nevertheless acquired this smaller tract of approximately 3.56 acres located immediately to the south of the Department's larger tract. The parties completed this transaction in July 1977. Like the initial land sale, this deed described the conveyed property by reference to a plat. Unlike the initial sale, however, this deed did not contain any easement over or reference to Inlet Harbour Drive. After this second transaction, the Department owned contiguous tracts which comprised the south and southeast corners of the north Murrells Inlet peninsula.

The Department transferred the 4.2–acre tract of property to the Corps of Engineers roughly one month after acquiring the 3.56–acre tract. Because the Department felt that the acquisition of the second tract was unnecessary, the Department leased the 3.56–acre tract to the Corps instead of transferring title to the Corps. Although the transfer of the 4.2–acre tract had the effect of cutting the 3.56–acre tract off from road access, it appears that the Corps and the Department continued to access the 3.56–acre tract, albeit very infrequently, by using Inlet Harbour Drive and then travers-

ing the 4.2–acre tract. The Department's lease with the Corps expired in the mid–1990's, and the Corps determined that it would not need to construct a deflector dike in order to maintain the Navigability Project. The Department then began investigating the subdivision and sale of the 3.56–acre tract, and this litigation followed.

The Inlet Harbour partnership initiated this declaratory judgment action against the Department requesting that the court declare the scope of the Department's right to use Inlet Harbour Drive to access the 3.56–acre tract. The Department asserted the creation of an express easement and an easement implied by necessity as counterclaims, and the Department sought to add Respondent Inlet Harbour Property Owners Association as a third-party defendant.[1] Although the property owners association answered that it had assigned all of its rights in this litigation to the partnership, there appears to be no continuing dispute involving the property owners association's inclusion as a party in this case.

The trial court entered a grant of partial summary judgment to the Department. Relying on the authority of *Blue Ridge Realty Company v. Williamson*, 247 S.C. 112, 145 S.E.2d 922 (1965), the trial court held that the Department had an easement for ingress and egress over Inlet Harbour Drive which arose out of the reference in the Department's deed to a plat depicting subdivided lots and streets. Although the trial court held that there was no doubt as to the existence of this easement, the court held that there was a genuine issue of material fact as to whether the scope of the Department's easement was unrestricted or was restricted to purposes relating to the Murrells Inlet Navigability Project. The parties proceeded to trial, and at the conclusion of the trial, the court held that the Department's easement over Inlet Harbour Drive was limited to environmental purposes associated with maintaining the navigability of Murrells Inlet. The Department appealed.

1. In the interim period between the Department's transfer of the 4.2–acre tract to the Corps and the expiration of the lease, the Inlet Harbour partnership transferred ownership of Inlet Harbour Drive to the Inlet Harbour Property Owners Association.

This Court certified the appeal from the court of appeals pursuant to Rule 204(b), SCACR. The Department raises the following issue for review:

Did the trial court err in holding that the Department's easement to use Inlet Harbour Drive is limited to environmental purposes associated with maintaining the navigability of Murrells Inlet?

## STANDARD OF REVIEW

██ The determination of the existence of an easement is a question of fact in a law action, *Jowers v. Hornsby,* 292 S.C. 549, 551, 357 S.E.2d 710, 711 (1987), and this Court reviews factual issues relating to the existence of an easement under a highly deferential standard. *See Townes Associates, Ltd. v. City of Greenville,* 266 S.C. 81, 85–86, 221 S.E.2d 773, 775 (1976) (providing that questions of fact in a law action are generally reviewed under the "any evidence" standard).

██ Apart from the issue of an easement's creation, however, the determination of the scope of an easement is an action in equity. *Tupper v. Dorchester County,* 326 S.C. 318, 323, 487 S.E.2d 187, 190 (1997). In an action at equity, tried by a judge alone, an appellate court may find facts in accordance with its own view of the preponderance of the evidence. *Townes,* 266 S.C. at 86, 221 S.E.2d at 775.

## LAW/ANALYSIS

The Department argues that the trial court erred in holding that the Department's easement over Inlet Harbour Drive is limited to environmental purposes associated with maintaining the navigability of Murrells Inlet. We disagree.

An easement is a right of use over another's property. BLACK'S LAW DICTIONARY 457 (5th ed. 1979). Easements can arise by both express creation and by implication. Implied easements are based upon the theory that whenever one conveys property, he intends to convey whatever is necessary for the property's use and enjoyment. 17A Am.Jur. *Easements* § 37 (1957). The purpose of an implied easement is to give effect to the intentions of the parties to a transaction, and because the implication of an easement in a conveyance goes against the general rule that a written instrument speaks for

itself, implied easements are not favored. *Id.*; *see also* 28A C.J.S. *Easements* § 61 (1996).

The creation of an implied easement generally requires that the facts and circumstances surrounding the conveyance, the property, the parties, or some other characteristic demonstrate that the objective intention of the parties was to create an easement. 25 Am.Jur.2d *Easements and Licenses* § 19 (2004); 28A C.J.S. § 62. Courts have, over time, developed various presumptions regarding the creation of implied easements in certain circumstances. One such presumption arises when an owner subdivides his land and has the land platted into lots and streets. This Court has recognized the general rule that when an owner conveys subdivided lots and references the plat in the deed, the owner grants the lot owners an easement over the streets appearing in the plat. *See, e.g., Blue Ridge Realty Co.,* 247 S.C. at 118, 145 S.E.2d at 924–25.[2]

■ In the instant case, the Department argues that the scope of their easement over Inlet Harbour Drive, implied by the Blue Ridge rule, should extend to using Inlet Harbour Drive for residential purposes. The Department first argues that because the rule enunciated in Blue Ridge commonly arises when a landowner has platted land into a residential subdivision, the rule presumptively creates an easement to use the platted roads for residential purposes. The Department further argues that the circumstances surrounding this transaction demonstrate that the parties did not intend that the 3.56–acre tract be forever limited to environmental purposes associated with maintaining the navigability of Murrells Inlet. In our view, both arguments miss the mark.

■ As a starting point, we note that the intentions of the parties to the transaction are the overriding focus when examining implied easements. *McAllister v. Smiley,* 301 S.C. 10, 16, 389 S.E.2d 857, 862 (1990) (Toal, J. dissenting); 28A

---

2. Other examples of these presumptions are easements implied where the grantor used one portion of property to serve another prior to severance (easements implied by prior use), and easements implied where an easement is necessary to allow a grantee to have meaningful access to his land (easements implied by necessity). *See Boyd v. BellSouth Tel. Tel. Co., Inc.,* 369 S.C. 410, 633 S.E.2d 136 (2006) (extensively discussing implied easements).

C.J.S. §§ 82, 149; 17A Am.Jur. §§ 40, 116; 25 Am.Jur.2d § 19. Thus, the Department over-reads *Blue Ridge* considerably in suggesting that the case stands for the proposition that an easement created by reference to a plat is presumptively an easement of a particular scope. The rule applied in *Blue Ridge* is nothing more than a presumption that when a grantor conveys property with reference to a plat showing streets or other ways of passage, the grantor intends to allow the grantee the use of the delineated streets and ways of passage. *McAllister,* 301 S.C. at 11–12, 389 S.E.2d at 858. The case *Cason v. Gibson,* 217 S.C. 500, 61 S.E.2d 58 (1950), explained the policy underlying this presumption in terms of estoppel. In that case, this Court explained that when a grantor conveys land abutting a street, he is estopped from denying the street's existence and the right of the grantee to its use. *Id.* at 507, 61 S.E.2d at 61. This approach is reasonable, and it is also reasonable that when an owner conveys property that has been subdivided for residential purposes, the grantor presumably intends for grantees to have access to the abutting subdivision streets for normal residential purposes. But the property at issue here is not subdivided residential property and abuts no road. This demonstrates the problems that might occur if we were to apply a rigid presumption based solely upon particular geography or land division. Our guidepost must be what the parties intended, and the best evidence of the parties' intentions are the facts and circumstances surrounding the conveyance. *See McAllister,* 301 S.C. at 12, 389 S.E.2d at 858–59; 28A C.J.S. §§ 82, 149; 25 Am.Jur.2d §§ 19, 21. Thus, to the extent the Department urges this Court to ignore everything except the deed's reference to a residential subdivision plat, this argument fails to remain true to the principles underlying implied easements.

■ Our analysis accordingly turns to an examination of the facts and circumstances surrounding the sale of the 3.56–acre tract. The Department argues that the partnership foresaw the likelihood that the 3.56–acre tract could one day be developed for residential purposes and that this is evidenced by the fact that both the 4.2–acre and the 3.56–acre tracts were carved out of an end of the peninsula labeled "reserved for future development" on one of the partnership's maps. The Department further argues that this evidence is sup-

ported by the testimony of a principal of the partnership providing that the partnership would have developed this land for residential purposes if it had not sold the land to the Department. According to the Department, this evidence supports the proposition that the partnership intended for this tract to be used both for purposes associated with maintaining the navigability of Murrells Inlet and for residential purposes.

We believe the trial court wisely discounted these arguments. Relying on testimony and evidence in the record, the court below took the view that the Inlet Harbour partnership purchased the land it sought to develop with the express understanding that portions of the land on the peninsula would need to be conveyed to the government for the specific purpose of the Murrells Inlet Navigability Project. This view was supported by testimony from the partnership that it engaged in several discussions with the state and federal entities involved and that the partnership designed the residential subdivision and Inlet Harbour Drive around the land that the project would demand. A principal of the partnership further testified that the designation of the areas acquired by the Department as "reserved for future development" specifically meant that the land was reserved for sale to the Corps of Engineers for the project.

A clarifying point is instructive. A great deal of the evidence surrounding this transaction does not focus directly on the issue of access to these tracts of land, but pertains instead to how the parties intended for this land to be used. Addressing the question of how this land may be used, the Department focuses on the lack of any restrictive covenants in the deed to the 3.56–acre tract and argues that it should not be prohibited from developing the property where the deed contains no restriction prohibiting such development. But the absence of restrictions in the Department's deed is not terribly relevant, and it is at this point that we must recognize an important distinction regarding what is and what is not at issue in this appeal. The question presented in this case is the scope of the Department's right to access the 3.56–acre tract through a specific route, not a limitation of the Department's right to use that tract. The Department unquestionably has the same right to make use of its land as does any landowner.

The concepts of deed warranties and restrictive covenants are thus largely irrelevant in this case.

This does not mean, however, that we should disregard the evidence of how the parties intended these tracts to be used as irrelevant to the issue of how the parties intended to treat access to these tracts. We do not think that the subjects can be completely separated. If the partnership designed its subdivision around the land that it knew the government would require and intended for this land to only be used for purposes related to the Murrells Inlet Navigability Project, that supports the proposition that the partnership intended for Inlet Harbour Drive to provide only a limited right of access to these tracts. Stated differently, the fact that the partnership contemplated a specific and limited use of this property is evidence that the partnership contemplated a specific and limited use of Inlet Harbour Drive to access the property. That this limited right of access would be the only right of access over Inlet Harbour Drive is further supported by the fact that the partnership initially attempted to insert a clause in the deed to the 4.2–acre tract that would have caused ownership of the tract to revert to the partnership if the property ceased to be used for the jetty project. The Department advised that a reverter would not comply with its responsibility under the project to acquire full title, and the parties thus crafted the express but limited easement found in the deed to the 4.2–acre tract.

The Department does not point us to any evidence demonstrating that the parties contemplated a broader use of Inlet Harbour Drive or intended for this land to one day be used for purposes unrelated to the Murrells Inlet Navigability Project. Indeed, the Department did not even offer testimony that it contemplated residential development of the 3.56–acre tract at the time of purchase. While we can say that the Department is correct in that its failure to secure utility easements or an easement across the 4.2–acre tract does not conclusively prove that later development was not contemplated at the time the partnership sold the 3.56–acre tract to the Department, the acquisition of such easements would make the Department's claim considerably stronger.[3] The Department could have

---

3. The Department eventually acquired an easement across the 4.2–acre tract, but that acquisition did not occur until 1996.

similarly bolstered its case through bargaining expressly for an unrestricted easement over Inlet Harbour Drive at the time it purchased the 3.56–acre tract from the partnership. Having not done so, the Court is left to discern how the parties intended to treat access to this property. Under these circumstances, we cannot say that the trial court erred in considering the failure to bargain for express utility and access easements in an effort to ascertain the parties' intentions.

The Department's strongest argument for reversal is one based largely on equity. The argument goes that because Inlet Harbour subdivision is a residential subdivision, there is no additional servitude imposed on Inlet Harbour Drive by allowing the Department to use the road for residential purposes. The Department bolsters this argument with the assertion that due to the property's oceanfront location, the property's value will be quite large if road access is granted and quite small if road access is denied. The Department argues that the fact that it leased the land to the Corps of Engineers instead of selling the land evidences the Department's intention to sell the property if it was not needed for the project.

But the equities in this case do not cut solely in the Department's favor. Absent an easement or a license, a landowner generally enjoys no right to use the land of another. Implied easements ask the court to take a deed between grantor and grantee which is silent regarding any grant or reservation of a right to cross one party's land to access the other's and imply what the parties must have meant to include in the deed but did not. In this case, this Court is charged with determining what the partnership and the Department meant to include in the deed regarding the Department's ability to use Inlet Harbour Drive to access the 3.56–acre tract. We find that there is simply very little support for the proposition that the circumstances surrounding this transaction evidence any intent by the parties that an easement over Inlet Harbour Drive extend beyond uses relating to the Murrells Inlet Navigability Project. The trial court viewed the evidence and determined that the parties intended for the limited access appearing in the deed to the 4.2–acre tract to

serve both parcels, and we agree with the trial court's determination.

Two final points are instructive. First, although the Department's argument about retaining the 3.56–acre tract instead of transferring the tract to the Corps of Engineers is arguably evidence that the Department contemplated someday selling the 3.56–acre property at the time it conveyed the 4.2–acre tract to the Corps, there is no evidence that Inlet Harbour partnership participated in this decision or was even aware of it. Similarly, the Department's argument based on having paid fair market value for the 3.56–acre tract is unpersuasive. The Department paid fair market value for the 4.2–acre tract despite the grant of a limited easement to access that tract, and the record contains testimony that the Department was statutorily required to purchase these tracts for fair market value.

In sum, we hold that the trial court properly concluded that the parties to this transaction did not intend for this land to be accessed by Inlet Harbour Drive for purposes unrelated to the Murrells Inlet Navigability Project. Accordingly, we affirm the trial court's decision that the Department of Parks, Recreation and Tourism's easement over Inlet Harbour Drive is limited to environmental purposes associated with maintaining the navigability of Murrells Inlet.[4]

## CONCLUSION

For the foregoing reasons, we affirm the trial court's decision.

MOORE, WALLER, JJ., and Acting Justice JAMES W. JOHNSON, JR., concur. PLEICONES, J., dissenting in a separate opinion.

---

4. We note that access to the property over navigable water has not been addressed at any point in this case. We therefore assume that the property is accessible over navigable water. *See* 25 Am.Jur.2d § 38 (providing that an easement by necessity will generally not be implied where property is accessible by navigable water); 28A C.J.S. § 98 (same).

98

Justice PLEICONES Dissenting:

I respectfully dissent, and would hold the circuit court erred in limiting the scope of the Department of Parks, Recreation and Tourism's (PRT's) easement over Inlet Harbour Drive.

The circuit court's finding of an implied easement has not been appealed and is therefore the law of the case. *E.g. Dreher v. Dreher*, 370 S.C. 75, 634 S.E.2d 646 (2006). The sole issue is whether the court erred in limiting the PRT's road easement as it relates to the second tract it purchased from respondent to "environmental purposes associated with maintaining the navigability of Murrells Inlet." The majority and I agree on the applicable legal principles, but I draw a different conclusion about the parties' intentions after examining the facts and circumstances surrounding the conveyance of the 3.56 acre tract.

In 1976, PRT bought a 4.2 acre tract from respondent at the behest of the Army Corps of Engineers. This 1976 deed contained an express easement limiting PRT's right to ingress and egress over Inlet Harbour Drive to "the sole purpose of constructing and maintaining the north sand dike and jetty for the Murrells Inlet, South Carolina, Navigation Project." More than a year later, PRT purchased the 3.56 tract at the insistence of the Corps. Among the facts and circumstances surrounding this second transaction was PRT's belief, ultimately vindicated, that this tract would not be necessary for the Corps' Murrells Inlet project. Accordingly, there was a need to preserve this tract's commercial viability. Even more critically in my opinion, the 1977 deed to the 3.56 acres contains no express easement, much less one limiting PRT's access to Inlet Harbour Drive, as had the March 1976 deed to the 4.2 acre tract. As I view the facts and circumstances surrounding the second conveyance, I can draw only one conclusion: that the parties did not intend any restriction upon the scope of PRT's Inlet Harbour Drive easement as it relates to the 3.56 acre tract.

Accordingly, I would reverse.