781 S.E.2d 115

**The SPUR AT WILLIAMS BRICE OWNERS ASSOCIATION, INC., Respondent,**

v.

**Sunil V. LALLA and Sharan W. Lalla, Appellants.**

Appellate Case No. 2013–001479.

No. 5362.

Court of Appeals of South Carolina.

Heard Oct. 15, 2014.

Decided Nov. 18, 2015.

Rehearing Denied Jan. 21, 2016.

74

76

S. Jahue Moore and John Calvin Bradley Jr., both of Moore Taylor Law Firm, P.A., of West Columbia, for appellants.

Brian Matthew Lysell, D. Reece Williams III, and W. Taylor Stanley of Callison Tighe & Robinson, LLC, of Columbia, for respondent.

McDONALD, J.

Sunil V. Lalla and Sharon W. Lalla (collectively, the Lallas), co-owners of a unit in a horizontal property regime known as The SPUR at Williams Brice Stadium (The SPUR), appeal the circuit court's order allowing The SPUR to enforce a restrictive covenant prohibiting the Lallas from renting their unit to any student currently enrolled in a two or four-year college. The Lallas argue the restriction has no reasonable basis and discriminates against a specific class of individuals. The Lallas further argue the circuit court erred in failing to hold the restrictive covenant null and void. We affirm.

## FACTS AND PROCEDURAL HISTORY

The SPUR is a horizontal property regime consisting of real property, condominiums, and general limited common areas. The SPUR was created by master deed dated September 19, 2006 (Master Deed). The SPUR at Williams Brice Owners Association, Inc. (the Association) is a nonprofit corporation that exists for the sole purpose of administering The SPUR and enforcing The SPUR's Master Deed and bylaws pursuant to the South Carolina Horizontal Property Act.[1] Article XIV of the Master Deed provides, in relevant part, the following:

> The rental of any unit to any student currently enrolled in a two (2) or four (4) year college, institute, or university is strictly prohibited. Additionally, any tenant of any Unit shall be prohibited from having any roommate that is enrolled in a two (2) or four (4) year college, institute, or university. Any tenant in violation of this Restriction shall have their lease automatically terminated, and shall have thirty (30) days to vacate the Unit.[2]

---

1. S.C.Code Ann. §§ 27–31–10 to –440 (2007 & Supp.2014).

2. Article XVI further provides:
 However, any owner or owners may allow their child or grandchild to reside in, or rent, the Unit that they own, even if that child or grandchild is currently enrolled in a two (2) or four (4) year college, institute, or university. Additionally, the child or grandchild of any owner or owners who reside in, or rent out, their parents['] or

Landmark Resources, LLC (Landmark) has managed the Association since July 1, 2007.

In 2007, the Lallas purchased a three-bedroom condominium at The SPUR (Unit 101) for $470,000. Sunil Lalla explained by affidavit that he "purchased the condo to enjoy football games at USC." When the Lallas purchased the unit, their daughter was considering attending college at the University of South Carolina. The Lallas intended for their daughter and two roommates to occupy Unit 101 during their college years and planned to receive rental payments from their daughter's roommates.

In 2008,[3] the real estate market declined, and Unit 101, like homes across the United States, substantially decreased in value. Despite their attempts, the Lallas were unable to sell the unit. At the time of the hearing in this matter, Unit 101 had been on the market for approximately four years.

During the summer of 2010, the Lallas notified the Association of their decision to rent to college students and began doing so. The Association's board meeting minutes from June 3, 2010, indicate the following:

> Management brought to the attention of the Board a comment form completed by an owner. The comment card stated that the Association is allowing the condominium to turn into a dormitory.... After discussing the comment card [with] the Board[,] a motion was made to consult with [the] drafters of the Master Deeds as it pertains to rentals. The motion was made to clarify the parameters of student rentals with the attorney—find out if a moratorium for students to rent can be placed immediately; motion was carried unanimously.

---

grandparents['] Unit shall be entitled to have one (1) roommate who is also currently enrolled in a two (2) or four (4) year college, institute, or university. Nothing contained herein shall prevent a person ... who is enrolled in a two (2) or four (4) year college, institute, or university, from purchasing a Unit or becoming an owner thereof.

3. During the summer of 2008, the Association adopted a set of rules and regulations that was distributed to each property owner at The SPUR.

On July 6, 2010, Landmark sent notice to each owner regarding enforcement of the Master Deed provision barring rentals to unrelated college students. The notice gave owners until May 31, 2011, to terminate any such leases.

The February 11, 2011 board meeting minutes state that "[a] letter was presented to the [b]oard from an attorney on behalf of Unit # 111 [4] contesting the [Association's] Master Deed of enforcing rental requirements." On May 25, 2011, Landmark sent another notice reminding owners that the Master Deed prohibited unit rentals to unrelated college students. Again, on July 14, 2011, the Association addressed the student rental issue in its board meeting minutes: "To identify renter[s] who are attending a 2 or 4 year school, all owner[s] must have potential renters complete [an] application and forward that application to the Board for approval ... The Board will also start enforcing the Rules and Regulations concerning renting units."

On October 10, 2011, the Association filed this declaratory judgment action seeking interpretation and enforcement of the Master Deed and bylaws. Specifically, the Association asked that the circuit court find the Lallas were "in violation of the Master Deed by renting to a student or students and should be enjoined from doing so now or in the future." The Association further sought an award of "costs and fees pursuant to [section 15–53–100 of the South Carolina Code (2005) ] and Section XXIIIC of the Master Deed."

The Lallas answered and counterclaimed, seeking a declaration that the restrictive covenant was null and void due to changed circumstances. The parties agreed to have the circuit court rule on the outstanding issues without testimony. The circuit court's order demonstrates that the parties had a "full opportunity" to create a record, present evidence through stipulated facts and affidavits, and present arguments through briefs.

The circuit court granted the Association's request for declaratory relief, ruling that "[w]hen the [Lallas] purchased Unit 101, they became subject to the provisions of the Master Deed and [b]ylaws." The Lallas appealed, asserting that the

---

4. This is not the unit at issue in this dispute.

restrictions discriminate against a specific class of individuals (college students) and are unreasonable as there has been no damage to other property owners. The Lallas further assert the circuit court erred in declining to hold the rental restriction null and void due to its unreasonableness and the changed economic circumstances depressing condominium values substantially below the 2007 purchase price.

Finally, the Lallas contend the court erred in ruling their affirmative defense of waiver inapplicable and in enjoining the Lallas from continuing to rent Unit 101 to their current tenants.

## STANDARD OF REVIEW

"Declaratory judgment actions are neither legal nor equitable and, therefore, the standard of review depends on the nature of the underlying issues." *Judy v. Martin,* 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009). "An action to enforce restrictive covenants by injunction is in equity." *S.C. Dep't of Nat. Res. v. Town of McClellanville,* 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001); *see also Cedar Cove Homeowners Ass'n, Inc. v. DiPietro,* 368 S.C. 254, 258–59, 628 S.E.2d 284, 286 (Ct.App.2006). "In an action at equity, tried by a judge alone, an appellate court may find facts in accordance with its own view of the preponderance of the evidence." *Inlet Harbour v. S.C. Dep't of Parks, Recreation & Tourism,* 377 S.C. 86, 91, 659 S.E.2d 151, 154 (2008). "However, we are not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to judge their credibility." *Straight v. Goss,* 383 S.C. 180, 192, 678 S.E.2d 443, 449 (Ct.App.2009). "Moreover, the appellant is not relieved of his burden of convincing the appellate court the trial judge committed error in his findings." *Pinckney v. Warren,* 344 S.C. 382, 387–88, 544 S.E.2d 620, 623 (2001). In an action for declaratory relief, the burden of proof rests with the party seeking the declaration, and that party must meet its burden by a greater weight or preponderance of the evidence. *See Vt. Mut. Ins. Co. v. Singleton,* 316 S.C. 5, 10, 446 S.E.2d 417, 421 (1994); *see also Menne v. Keowee Key Prop. Owners' Ass'n, Inc.,* 368 S.C. 557, 564, 629 S.E.2d 690, 694 (Ct.App.2006).

## LAW AND ANALYSIS

### I. Restrictive Covenant

 The Lallas argue the circuit court erred in determining that they failed to meet their burden of establishing that the restrictive covenant is unreasonable and unenforceable. We disagree.

 "Restrictive covenants, sometimes referred to as 'real covenants,' are agreements 'to do, or refrain from doing, certain things with respect to real property.'" *Kinard v. Richardson*, 407 S.C. 247, 257, 754 S.E.2d 888, 893 (Ct.App. 2014). "Restrictive covenants are contractual in nature, and thus, the language used in the restrictive covenant is to be construed according to its plain and ordinary meaning." *Penny Creek Assocs., LLC v. Fenwick Tarragon Apartments, LLC*, 375 S.C. 267, 271, 651 S.E.2d 617, 620 (Ct.App.2007). Restrictions on the use of property are historically disfavored. *Sea Pines Plantation Co. v. Wells*, 294 S.C. 266, 270, 363 S.E.2d 891, 893 (1987). "The historical disfavor of restrictive covenants by the law emanates from the widely held view that society's best interests are advanced by encouraging the free and unrestricted use of land." *Rhodes v. Palmetto Pathway Homes, Inc.*, 303 S.C. 308, 311, 400 S.E.2d 484, 485 (1991).

 The law governing the enforceability of covenants restricting the use of real property is well-established in South Carolina. "A restriction on the use of the property must be created in express terms or by plain and unmistakable implication, and all such restrictions are to be strictly construed, with all doubts resolved in favor of the free use of property." *Buffington v. T.O.E. Enters.*, 383 S.C. 388, 392, 680 S.E.2d 289, 291 (2009). In order to enforce a restrictive covenant, "a party must show that the restriction applies to the property either by the covenant's express language or by a plain and unmistakable implication." *Id.; see also Sea Pines Plantation Co.*, 294 S.C. at 269, 363 S.E.2d at 894 ("A restrictive covenant will be enforced if the covenant expresses the party's intent or purpose, and this rule will not be used to defeat the clear express language of the covenant."). "Courts shall enforce such covenants unless they are indefinite or contravene public policy." *Sea Pines Plantation Co.*, 294 S.C. at 270, 363 S.E.2d at 894. As with any other action on a contract, the party who

seeks to enforce a restrictive covenant has the burden of proving that the non-moving party intended to create a covenant. *Charping v. J.P. Scurry & Co.*, 296 S.C. 312, 314, 372 S.E.2d 120, 121 (Ct.App.1988).

In their answer, the Lallas admit they own a unit in The SPUR, and that they are subject to the provisions of the Master Deed and bylaws. Under article VIII of the Master Deed, "every Condominium ... is hereby ... subject to the restrictions, easements, conditions, and covenants prescribed and established herein." Furthermore, the bylaws established by the Association provide that "[a]ll present or future co-owners ... are subject to the regulations set forth in these [bylaws] and in said Master Deed." Under the South Carolina Horizontal Property Act, "[e]ach co-owner shall comply strictly with the bylaws ... and with the covenants, conditions and restrictions set forth in the master deed." S.C.Code Ann. § 27–31–170 (2007). In reviewing the Lallas' admissions, The SPUR's Master Deed, the Association's bylaws, the pertinent statutes, and the circuit court's order, we find no error in the circuit court's ruling that "when the [Lallas] became owners of a unit in [The SPUR], they voluntarily and intentionally bound themselves by the restrictive covenants barring the rental of any unit to college students who are unrelated to the unit's owner." Accordingly, we affirm the circuit court's ruling that the rental ban provision of the restrictive covenant is binding upon the Lallas.

## II. The Lallas' Affirmative Defenses

Upon the Association's showing that the restrictive covenant was binding on the Lallas, the Lallas bore the burden of asserting affirmative defenses to the restrictive covenant's enforceability. *See Circle Square Co. v. Atlantis Dev. Co.*, 267 S.C. 618, 628, 230 S.E.2d 704, 708 (1976). The circuit court ruled the restrictive covenant does not contravene public policy, as it neither unconstitutionally discriminates nor violates the statutory laws of the United States or the State of South Carolina. The circuit court further opined that a change in market conditions is not a valid defense to the enforcement of a restrictive covenant.

## A. Unreasonable Restrictions

On appeal, the Lallas argue the circuit court erred in failing to find the restrictive covenant unenforceable because it is unreasonable. We disagree.

Part of the Lallas' argument on this point is that "[t]his class of currently enrolled college students is indistinguishable from college students who are children and grandchildren of owners or their roommates. This class is indistinguishable from college students who are condo owners." It does not appear that the circuit court addressed this particular "reasonableness" argument. *See Staubes v. City of Folly Beach,* 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) ("It is well-settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [circuit] court to be preserved for appellate review."). Moreover, the Lallas did not move for reconsideration of this issue under Rule 59(e), SCRCP. *See Noisette v. Ismail,* 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (finding issue was not preserved where the trial judge did not explicitly rule on the appellant's argument and the appellant did not raise the issue in a Rule 59(e), SCRCP, motion to alter or amend the judgment); *West v. Newberry Elec. Coop.,* 357 S.C. 537, 543, 593 S.E.2d 500, 503 (Ct.App.2004) (stating an issue that is neither addressed by the trial judge in a final order nor raised by way of a Rule 59(e), SCRCP, motion is not preserved for review). Thus, we conclude the question of whether South Carolina should incorporate a separate reasonableness test—as distinguished from the "rational basis" equal protection analysis—regarding the enforceability of restrictive covenants in the Master Deed of a horizontal property regime is unpreserved.[5]

---

5. In *Dunes W. Golf Club, LLC v. Town of Mount Pleasant,* our supreme court clarified that "the equal protection clause does not prohibit different treatment of people in different circumstances under the law." 401 S.C. 280, 294–95, 737 S.E.2d 601, 608–09 (2013) (quoting *Harbit v. City of Charleston,* 382 S.C. 383, 396, 675 S.E.2d 776, 782–83 (Ct.App. 2009)); *see also Town of Hollywood v. Floyd,* 403 S.C. 466, 480–81, 744 S.E.2d 161, 168 (2013) (recognizing clarification). As this is precisely the prohibition the Lallas propose as a defense to enforcement in asserting that family-member and unit-owning college student residents are indistinguishable from the non-related college student class barred by the rental restriction, they would be unable to prevail on the merits of this argument as well.

## B. Equal Protection[6]

██ The Lallas argue the rental restriction is impermissibly discriminatory and violates the Equal Protection Clauses of article I, section 3 of the South Carolina Constitution and the Fourteenth Amendment of the United States Constitution. We disagree.

 Article I, section 3 of the South Carolina Constitution provides, in pertinent part, that no person shall "be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws." S.C. Const. art. I, § 3; *see also Sunset Cay, LLC v. City of Folly Beach*, 357 S.C. 414, 428, 593 S.E.2d 462, 469 (2004). Similarly, the Equal Protection Clause of the United States Constitution provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. While the private acts and agreements of individuals do not implicate the Equal Protection Clause, "the action of state courts and of judicial officers in their official capacities is to be regarded as action of the State within the meaning of the Fourteenth Amendment." *Shelley v. Kraemer*, 334 U.S. 1, 14, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) (holding the states denied petitioners the equal protection of the laws in granting judicial enforcement of certain restrictive agreements). Therefore, for a restrictive covenant to be judicially enforceable, it must not discriminate on the basis of a classification that, if applied by the state, would contravene either the state or federal Equal Protection Clause.

 "To satisfy the equal protection clause, a classification must (1) bear a reasonable relation to the purpose sought to be achieved, (2) members of the class must be treated alike under similar circumstances, and (3) the classification must

---

6. "The general rule, well established in South Carolina, is that courts will not enforce a contract when the subject matter of the contract or an act required for performance violates public policy as expressed in constitutional provisions, statutory law, or judicial decisions." *White v. J.M. Brown Amusement Co.*, 360 S.C. 366, 371, 601 S.E.2d 342, 345 (2004); *see also Batchelor v. Am. Health Ins. Co.*, 234 S.C. 103, 108, 107 S.E.2d 36, 38 (1959) (holding contracts violating public policy as expressed in constitutional provisions, statutes, or judicial decisions are void).

rest on some rational basis." *Sunset Cay,* 357 S.C. at 428, 593 S.E.2d at 469. Use of a classification will be declared unconstitutional under the Equal Protection Clause "if its repugnance to the Constitution is clear beyond a reasonable doubt." *Taylor v. Medenica,* 331 S.C. 575, 578, 503 S.E.2d 458, 460 (1998). "Where an alleged equal protection violation does not implicate a suspect class or abridge a fundamental right, the rational basis test is used." *Dunes W. Golf Club, LLC,* 401 S.C. at 293, 737 S.E.2d at 608; *see also Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *Sunset Cay,* 357 S.C. at 428–29, 593 S.E.2d at 469. "In a case such as this, the rational basis standard, rather than strict scrutiny, applies because the classification at issue does not affect a fundamental right and does not draw upon inherently suspect distinctions such as race, religion, or alienage." *Harbit,* 382 S.C. at 396, 675 S.E.2d at 783.

 An inherently suspect classification is one whose members have faced a long history of discrimination, *see Palmore v. Sidoti,* 466 U.S. 429, 432, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984); whose members are a discrete and insular minority who would otherwise be unheard by the political process, *see United States v. Carolene Products Co.,* 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938); or which is drawn according to an immutable trait acquired at birth, *see Frontiero v. Richardson,* 411 U.S. 677, 686, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). We agree with the circuit court that because college students have not faced a long history of discrimination, are not an insular minority, and have not been classified according to an immutable trait acquired at birth, a classification based upon an individual's status as a college student is not inherently suspect. Thus, we conclude the circuit court correctly applied a rational basis analysis in rejecting the Lallas' equal protection claim.

A classification bears a rational relationship to its purpose as long as there is some evidence that it will further a legitimate purpose. *See Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) (explaining that the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the facts on which the classification is based rationally may have been considered to be true by the decision maker, and the relationship of the

classification to the goal is not so attenuated as to render the distinction arbitrary or irrational); *see also Whaley v. Dorchester Cty. Zoning Bd. of Appeals,* 337 S.C. 568, 576, 524 S.E.2d 404, 408 (1999) (noting a legitimate government interest exists in limiting traffic and protecting aesthetic values in residential areas).

 A classification may withstand rational basis review even if it is underinclusive or overinclusive, so long as the classification is not arbitrary. *See Ry. Express Agency v. New York,* 336 U.S. 106, 109–10, 69 S.Ct. 463, 93 L.Ed. 533 (1949) (finding a traffic regulation satisfied rational basis review even though it prohibited motorists from selling general advertising space on their vehicles but allowed business owners to advertise their products on vehicles engaged in that business); *id.* at 110, 69 S.Ct. 463 ("It is no requirement of equal protection that all evils of the same genus be eradicated or none at all."); *N.Y.C. Transit Auth. v. Beazer,* 440 U.S. 568, 592–94, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979) (holding the exclusion of those in methadone maintenance programs from employment in the Transit Authority was constitutionally permissible even though many participants would be able to perform the requisite job functions safely); *Vance v. Bradley,* 440 U.S. 93, 108–09, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) (holding mandatory retirement age constitutional despite the statute being underinclusive in failing to remove from employment some younger individuals who were no longer qualified to continue working and overinclusive in removing from employment those who were older but still capable).

 The purpose of the restrictive covenant's classification in this case is to ensure the comfort and safety of The SPUR's residents and protect the investments of property owners by minimizing the risk of creating a dormitory-like atmosphere at the complex. The rental prohibition is rationally related to its purpose because it bars from the pool of possible renters a population that the Association alleges has a tendency to engage in certain behaviors dangerous to themselves and disruptive to those around them. The fact that some potential renters barred by the college student prohibition might not be disruptive or disorderly does not render the classification itself

arbitrary or constitutionally violative. *See, e.g., Beazer,* 440 U.S. at 592–94, 99 S.Ct. 1355.

Accordingly, we affirm the circuit court's well-reasoned opinion that the restrictive covenant satisfies both the federal and state equal protection clauses because it is "rationally related to maintaining the safety, comfort, and investment of owners."

## C. Fair Housing Protections[7]

■■■ The Lallas further argue that the circuit court erred in enforcing the Association's rental restriction because it is unreasonable, discriminatory, and seeks to prohibit an ordinary class of people from access to housing accommodations in violation of state and federal law. We disagree.

The federal Fair Housing Act and South Carolina Fair Housing Law prohibit discrimination in the rental of a dwelling based upon a person's race, color, religion, sex, familial status, or national origin. *See* S.C.Code Ann. § 31–21–40 (2007); 42 U.S.C. § 3604 (2012). Within both statutes, " 'familial status' means one or more individuals (who have not attained the age of eighteen years) being domiciled with—(1) a parent or another person having legal custody of such individual or individuals; or (2) the designee of such parent or other person having such custody...." 42 U.S.C. § 3602(k) (2012); *see* S.C.Code Ann. § 31–21–30(6)(a) (2007).

Here, the rental restriction is wholly unrelated to any classification protected by state and federal housing laws. *See, e.g., Tufano v. One Toms Point Lane Corp.,* 64 F.Supp.2d 119, 126 (E.D.N.Y.1999) (holding that where a plaintiff's amended complaint failed to allege discrimination based upon one of the six "denominated determinants" there was no discriminatory nexus and his Fair Housing Act claim must be dismissed). Thus, we affirm the circuit court's ruling that the restrictive covenant is neither unconstitutionally discriminatory nor violative of state or federal law.

---

7. *See* United States Fair Housing Act, 42 U.S.C. §§ 3601–3631; South Carolina Fair Housing Law, S.C.Code Ann. §§ 31–21–10 to –150 (2007 & Supp.2014).

### D. Change in Economic Circumstances

 The Lallas argue the circuit court erred in failing to hold the Association's restrictions null and void as the change in economic conditions, specifically the decline in the real estate market following their purchase of the Unit, renders enforcement of the restrictions unreasonable. We disagree.

 "Under South Carolina law, a party may bring a declaratory judgment action to invalidate a restrictive covenant based on a change of conditions." *Menne*, 368 S.C. at 564, 629 S.E.2d at 694. "[A]ffirmative relief may be granted against a restrictive covenant where there is such a change in the character of the neighborhood as to render the enforcement of the covenant valueless to the covenantee and oppressive and unreasonable as to the covenantor." *Id.* However, South Carolina courts have been hesitant to terminate a restrictive covenant on the basis of a change in conditions. *Id.; Shipyard Prop. Owners' Ass'n v. Mangiaracina*, 307 S.C. 299, 308–09, 414 S.E.2d 795, 801 (Ct.App.1992). "A party seeking to annul a restrictive covenant must show the change of conditions represented so radical a change that the original purpose of the restrictive covenant can no longer be realized." *Menne*, 368 S.C. at 564, 629 S.E.2d at 694. Notwithstanding the changed character, when one protected by a covenant seeks enforcement thereof, we cannot endorse the change while the purpose of the covenant may still be accomplished. *Circle Square Co.*, 267 S.C. at 631, 230 S.E.2d at 709.

In *Buffington,* our supreme court reviewed an order enjoining the operators of a Toyota dealership from using their real property—located across from the dealership and within a subdivision—for commercial purposes. 383 S.C. at 390, 680 S.E.2d at 290. Certain lots within the subdivision, including the lots owned by the dealership operators, were subject to a restrictive covenant limiting their use to residential purposes. *Id.* at 390–91, 680 S.E.2d at 290. In examining the equities relating to enforcement of the covenant, the court concluded it would be inequitable to consider the dealership operators' financial loss in purchasing and improving their land because they were on notice of the subdivision's restriction prohibiting any use other than residential when they purchased it. *Id.* at 393, 680 S.E.2d at 291. The *Buffington* court further found

that to ignore the restriction, in the absence of evidence to support lifting the restriction based on equitable doctrines, "would eliminate a homeowner's justified reliance on property restrictions." *Id.* at 393–94, 680 S.E.2d at 291–92.

In this case, the purpose of the restrictive covenant is to ensure the safety of The SPUR's residents as well as the value of the unit owners' investments. The units' decrease in value due to the declining real estate market and economy had no effect on the Association's need to minimize the risk that The SPUR might develop a dormitory-like atmosphere. Like the dealership operators in *Buffington,* when the Lallas purchased their unit, they were on notice (by way of the Master Deed) of the restrictive covenant prohibiting the rental of any unit to college students unrelated to the unit's owner. Accordingly, we agree with the circuit court that the economic change in conditions alleged by the Lallas fails to support the discharge of the restrictive covenant.

### E. Waiver

The Lallas argue the circuit court erred in ruling that the affirmative defense of waiver was unavailable in this case. We disagree.

"Waiver is a voluntary and intentional abandonment or relinquishment of a known right. It may be expressed or implied by a party's conduct, and it may be applied to bar a party from relying on a statute of limitations defense." *Parker v. Parker,* 313 S.C. 482, 487, 443 S.E.2d 388, 391 (1994) (citation omitted). "An implied waiver results from acts and conduct of the party against whom the doctrine is invoked from which an intentional relinquishment of a right is reasonably inferable." *Lyles v. BMI, Inc.,* 292 S.C. 153, 158–59, 355 S.E.2d 282, 285 (Ct.App.1987). The party asserting waiver has the burden of proof. *Provident Life & Accident Ins. Co. v. Driver,* 317 S.C. 471, 478, 451 S.E.2d 924, 929 (Ct.App.1994). "Generally, the party claiming waiver must show that the party against whom waiver is asserted possessed, at the time, actual or constructive knowledge of his rights or of all the material facts upon which they depended." *Janasik v. Fairway Oaks Villas Horizontal Prop. Regime,* 307 S.C. 339, 344, 415 S.E.2d 384, 387–88 (1992).

Here, the circuit court determined that the Lallas failed to produce any evidence to support a waiver defense. *See Provident Life & Accident Ins. Co.*, 317 S.C. at 478, 451 S.E.2d at 929 ("Waiver, like estoppel, is an affirmative defense and the burden of proof is upon the party who asserts it."). The Lallas contend the circuit court ignored the evidence in the record that the Association allowed other non-related students to live at The SPUR. However, we find that even if the Association previously failed to monitor the rental of units, the record reflects that, upon receiving a complaint, the Association took action to enforce the restrictive covenant prohibiting rentals to unrelated college students. Therefore, the circuit court properly found no waiver by the Association of its right to enforce the rental restriction. *See, e.g., King v. James*, 388 S.C. 16, 30, 694 S.E.2d 35, 42–43 (Ct.App.2010) (finding waiver defense inapplicable and explaining that "for a party to waive a right, the party must have known of the right and known that the right was being abandoned."). Accordingly, we affirm the circuit court's finding that waiver is inapplicable.

### III. Injunction

In their reply brief, the Lallas argue the circuit court erred in enjoining them from continuing to rent their unit to their current tenants. We find this argument is not properly before the court. *See Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 692 (Ct.App.2001) ("[A]n argument made in a reply brief cannot present an issue to the appellate court if it was not addressed in the initial brief.").

### CONCLUSION

The circuit court properly held the rental prohibition of Article XIV of the Master Deed and Restrictive Covenant to be valid and enforceable. The circuit court's enjoining of the Lallas from renting, or continuing to rent, their unit in violation of the restrictive covenant was likewise proper. Accordingly, the ruling of the circuit court is

**AFFIRMED.**

WILLIAMS and GEATHERS, JJ., concur.