682 S.E.2d 831

**HYNES FAMILY TRUST, and Richard
W. Hynes, Trustee, Appellants,**

v.

**Heide SPITZ, Respondent.**

**No. 4594.**

Court of Appeals of South Carolina.

Submitted April 23, 2009.

Decided July 21, 2009.

626

John Martin Foster, of Rock Hill, for Appellants.

Alford Haselden, of Clover, and John Kevin Owens, of Spartanburg, for Respondent.

LOCKEMY, J.

The Hynes Family Trust and Richard W. Hynes (Hynes) allege the trial court erred in finding there was no express easement or easement by prior use permitting Hynes to maintain a storm water drainage pipe across Heide Spitz's (Spitz) property. We affirm in result.

## FACTS

Hynes and Spitz own adjoining townhomes in the Daybreak community in Tega Cay, South Carolina. The town homes share a common wall and are part of a single building containing three units. Hynes's town home is the middle unit, and the Spitz's town home is an end unit. Each unit is situated on a separately owned lot which extends from front to back beyond the confines of the town home itself. The Hynes property is higher in elevation than the Spitz property. Before this dispute arose, storm water from Hynes's roof was collected into his gutters and piped down the side of his unit. At the termination of the gutter, a corrugated plastic pipe was connected to another piece of pipe which ran underground and across Spitz's property out into a common area of the Daybreak community.

Around July 2004, Spitz disconnected and diverted Hynes's storm drainage system. Spitz alleged the configuration of the drainage system caused water to be discharged onto her property and interfered with her use and enjoyment of her patio. Hynes brought suit against Spitz alleging an express

easement existed permitting the drainage pipe to cross Spitz's property by virtue of the Declaration of Covenants, Conditions and Restrictions (Covenants) for the Daybreak community. Spitz denied the existence of any easement and counterclaimed requesting Hynes be enjoined from discharging water from his gutter onto her property. The trial court issued an order on March 21, 2007, denying Hynes's requested relief. Specifically, the trial court found that no express easement or easement by prior use existed permitting the placement of the drainage pipe across Spitz's property. The trial court also ordered Hynes to disconnect the means of discharging gutter water at the current location. This appeal followed.

## STANDARD OF REVIEW

"On appeal of an action at law tried without a jury, the findings of fact of the trial court will not be disturbed unless found to be without evidence which reasonably supports the trial court's findings." *Hardaway Concrete Co., Inc. v. Hall Contracting Corp.*, 374 S.C. 216, 223, 647 S.E.2d 488, 491 (Ct.App.2007). "The determination of the existence of an easement is a question of fact in a law action and subject to an 'any evidence' standard of review when tried by a judge without a jury." *Slear v. Hanna*, 329 S.C. 407, 410, 496 S.E.2d 633, 635 (1998).

### LAW/ANALYSIS

### I. Express Easement

Hynes argues the trial court erred in finding the Covenants did not provide an express easement permitting him to maintain a drainage pipe across Spitz's property. We agree.

Article 2, § 6 of the Daybreak Covenants states:

*Storm Drainage and Sanitary Sewer Systems.* Storm drainage systems and sanitary sewer systems may be located under certain Lots throughout the Properties. Any such storm drainage and sanitary sewer systems shall be maintained in good order and repair by the Association. To the extent required to effectuate the foregoing plan, there shall be an easement in favor of each Lot for the purposes of providing connection of that Lot with the storm drainage system and sanitary sewer system most convenient thereto.

Each Lot shall be subject to easements in favor of all the other Lots providing for the passage through any portion of such Lot of necessary storm drainage systems and sanitary sewer systems. All of the foregoing easements are granted and reserved subject to the conditions that their use and enjoyment shall not materially interfere with the use, occupancy or enjoyment of all or any part of the Lot servient to such easements or to which such easements are appurtenant.

The trial court determined the drainage system at issue was not part of any "regularly interacting storm water drainage system." The trial court noted there was no uniform system of drainage, and homeowners in Daybreak handled drainage using a variety of methods. Furthermore, the trial court noted there was no evidence the system was ever maintained or recognized by Daybreak. Thus, the trial court concluded there was no express easement permitting Hynes to discharge his gutter water into the drainage pipe located on Spitz's property.

### A. Definition of "System"

Hynes argues the trial court's definition of the term "system" is too selective. Specifically, Hynes contends the language of the Covenants refers to plural systems and thus the purpose of the Covenants was to permit multiple storm drainage systems planned and built into the structure of the townhouse units. We agree.

Restrictive covenants upon real estate are contractual in nature and bind the parties thereto just like any other contract. *Queens Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.*, 368 S.C. 342, 361, 628 S.E.2d 902, 913 (Ct.App.2006). "Restrictive covenants are construed like contracts, and may give rise to actions for their breach." *Id.* "If a contract's language is clear and capable of legal construction, this Court's function is to interpret its lawful meaning and the intent of the parties as found in the agreement." *Gilbert v. Miller*, 356 S.C. 25, 31, 586 S.E.2d 861, 864 (Ct.App.2003) "A clear and explicit contract must be construed according to the terms the parties have used, with the terms to be taken and understood in their plain, ordinary, and popular sense." *Id.*

Hynes contends a "system" can consist of individual units joined only by their intended purpose, rather than in physical fact. The trial court, citing Webster's Dictionary, defined the term "system" as "a regularly interacting or interdependent group of items forming a unified whole." Hynes argues this definition is too selective and contends the trial court should have considered an alternate definition from Webster's Dictionary. Hynes urged the trial court to define "system" as "a group of devices or artificial objects or an organization forming a network especially for distributing something or serving a common purpose."

The Covenants specifically refer to plural storm water drainage systems and do not contain any requirement that these systems be uniform. Evidence presented at trial through testimony and photographs indicates there was no uniform drainage system for Daybreak and that homeowners handled drainage using a variety of methods. We find compelling Hynes's argument that the trial court's definition of "system" is too selective. Furthermore, we find the trial court improperly relied on the lack of uniformity as a basis for finding no express easement in the Covenants. Although we find an express easement existed, we affirm the trial court's order based on the express easement's interference with Spitz's use and enjoyment of her patio.

### B. Interference with Use and Enjoyment

Hynes also argues the trial court erred in finding the storm water drainage system interfered with Spitz's enjoyment of her patio. We disagree.

The trial court found that even if an express drainage easement existed, it would be limited by the language of the Covenants. Article 2, § 6 of the Covenants provides that use of the easement "shall not materially interfere with the uses, occupancy or enjoyment of all or any part of the Lot servient to such easement." The trial court noted Spitz testified the drainage pipe caused water to be discharged onto her patio which interfered with her enjoyment of the property. Hynes argues the trial court's finding that the downspout and drain "always" left Spitz's property wet was not supported by any evidence. He contends Spitz was unable to say whether the

water on her property was a result of the drainage system. Spitz testified that she wanted to extend her patio but she couldn't because she feared the discharged water would create problems after she invested her money in the project. Accordingly, we find there was evidence in the record to support the trial court's finding that the drainage system interfered with Spitz's use and enjoyment of her property. Thus, although the Covenants grant Hynes an express easement, that easement is conditioned by the language of the Covenants because it interferes with Spitz's use, occupancy and enjoyment of her property.

## C. Acknowledgement by Daybreak

Hynes also argues the trial court's finding that the Daybreak Homeowners Association (Association) failed to acknowledge and maintain the drainage system is not dispositive of his easement rights. Specifically, Hynes asserts that the trial court's finding of a lack of acknowledgement means that if the Association has not acknowledged or maintained a system, then that system does not have the right to continued existence under the Covenants. We disagree.

Hynes argues the issue of the Association's acknowledgement of or involvement in the drainage system was not plead by either party and was not raised by the trial court as an issue at trial. He contends the acknowledgement was not tried before the trial court and thus the acknowledgement issue could not serve as a basis for the trial court's decision. See 46 Am.Jur.2d Judgments § 2 ("[A] party may not be granted relief in the absence of pleadings to support that relief, and a judgment based on an issue not pleaded is a nullity."). Spitz contends Hynes asserted in his Complaint the existence of an express easement pursuant to Article 2, § 6 of the Covenants which included the language that any storm water drainage systems shall be maintained by the Association.

Furthermore, Spitz argues Hynes incorrectly assumed the trial court relied on a lack of acknowledgement as determinative of the issue of the existence of an easement. Spitz contends the trial court's reference to the lack of an acknowledgement of the drainage system by the Association was

significant because if the system at issue was to be considered part of a "storm water drainage system" protected by an express easement, it would have been maintained and repaired by the Association. Article 2, § 6 of the Covenants states: "[a]ny such storm drainage and sanitary sewer systems shall be maintained in good order and repair by the Association." Spitz contends the Association's lack of repairs and maintenance on the drainage system are only evidence the drainage system was not part of a system contemplated by the Covenants. The trial court specifically based its ruling on the definition of "storm water drainage system" and the lack of a uniform drainage system. The trial court merely noted its finding was supported by the fact that the Association never maintained the system. Accordingly, we find the trial court's findings regarding the Association's acknowledgement and maintenance of the system were not determinative of the existence of an express easement.

## II. Easement by Prior Use

Hynes argues the trial court erred in finding he failed to establish a drainage easement across Spitz's property by prior use. We disagree.

"The determination of the existence of an easement is a question of fact in a law action and subject to an 'any evidence' standard of review when tried by a judge without a jury." *Slear v. Hanna*, 329 S.C. 407, 410, 496 S.E.2d 633, 635 (1998). Our supreme court held a party must prove the following six factors to establish the right to an easement implied by prior use:

(1) unity of title; (2) severance of title; (2) the prior use was in existence at the time of unity of title; (3) the prior use was not merely temporary or casual; (4) the prior use was apparent or known to the parties; (5) the prior use was necessary in that there could be no other reasonable mode of enjoying the dominant tenement without the prior use; and (6) the common grantor indicated an intent to continue the prior use after severance of title.

*Boyd v. Bellsouth Tel. Telegraph Co.*, 369 S.C. 410, 417, 633 S.E.2d 136, 139 (2006).

■ Hynes argues there is indirect evidence the drainage system has been in place since construction of the townhomes. He contends Daybreak was a planned subdivision with planned housing and draining. Hynes argues the location of the downspout, the higher elevation of his property, and the common building scheme of the subdivision lead to the conclusion that the drainage system existed at the time the townhouses were built and sold. Furthermore, Hynes contends the prior use of the drainage system was not temporary, that it was or should have been apparent to all parties, and its location indicated the grantor's intent to continue the use after the sale of the townhomes.

There is no evidence in the record establishing how long the drainage system has been in place. Hynes testified the drainage system was in place when he purchased his townhome in 1996. While Hynes introduced the deposition testimony of two prior owners of the Spitz property, their testimony did not create a complete timeline beginning with the original grant of the property to Daybreak or the original severance. These prior owners testified the drainage system was in place in the 1990s, but could not link the drainage system to the construction of the townhomes. Therefore, the record contains no evidence the drainage system has been in existence since the original division of the property.

Moreover, Hynes failed to prove the location of the drainage system was necessary to his enjoyment of his property and no other reasonable locations were available. Evidence in the record indicates Hynes could have discharged his gutter water onto his own property without unreasonable burden or expense. Spitz's structural engineering expert witness testified Hynes could have run the drainage pipe down his property line and not across Spitz's property and that the water would have drained properly.[1] Accordingly, we find there was evidence in the record to support the trial court's finding that Hynes failed to establish an easement by prior use, and we affirm the trial court's ruling.

---

1. Spitz's plumber testified it would cost approximately $300 for Hynes to run the storm water drainage pipe to the rear of his property.

## CONCLUSION

We find there was an express easement permitting Hynes to maintain a storm water drainage pipe across Spitz's property. However, we find the easement interferes with Spitz's use and enjoyment of her property and is therefore conditioned by the language of the Covenants. Furthermore, we find Hynes failed to establish an easement by prior use permitting him to maintain a storm water drainage system across Spitz's property. Accordingly, the trial court's order is

**AFFIRMED IN RESULT.**

HEARN, C.J., and PIEPER, J., concur.