706 S.E.2d 520

**Richard M. PENDARVIS and Thomas A. Pendarvis, Respondents,**

v.

**Jewell K. COOK a/k/a Judy Pendarvis, Appellant.**

**No. 4793.**

Court of Appeals of South Carolina.

Heard Dec. 8, 2010.

Decided Feb. 17, 2011.

David Jay Parrish, of Charleston, for Appellant.

A. Parker Barnes, Jr., and Thomas A. Pendarvis, both of Beaufort, for Respondents.

FEW, C.J.

Jewell Cook appeals the master's order granting Respondents Thomas and Richard Pendarvis an easement over a portion of a private road that was recently discovered to cross onto her land. The master granted an easement under the theories of prescriptive easement and easement implied by prior use. We affirm the trial court's order granting an easement implied by prior use.

## I. Facts and Procedural History

Respondents are brothers whose stepgrandfather, Irvin Tavel, owned property on Peters Point Road on Edisto Island. Respondents grew up camping, hunting, and fishing on the property with Tavel. By June 1972, Tavel built a road across the property to provide access from Peters Point Road to the other side of the property bordering Sandy Creek.[1] Respondents helped Tavel build, repair, and maintain the road. In 1974, Tavel divided the property into two tracts. He retained the eastern tract A for himself and conveyed tract B to his wife to hold in trust for Respondents, who were eleven and twelve years old. Ann Pendarvis, Respondents' mother, testified that Tavel "wanted [Respondents] to have that property and to build and keep it up[,] ... to do a lot of the work. Every time [they] went to visit, they would haul sea shells, or stone and dirt, whatever, across the road in a wagon or a go-cart to fill in the muddy spaces, the marsh." In addition to holding the land in trust for Respondents, their grandmother opened a trust account named "Sandy Creek—T & R Pendarvis" for the benefit of maintaining the land. Money from the account was used for various maintenance of the road in the mid– to late–1970s. In 1977, Tavel deeded tract A to Respondents' father, J.M. "Butch" Pendarvis.

---

1. A prior road was built in the 1960s which ended near Sandy Creek on tract A; however, since Tavel moved the road in the early 1970s to its present location it has remained the sole access from Peters Point Road to Sandy Creek.

The portion of the road at issue in this case is a causeway located over wetlands. Thomas Pendarvis testified that Tavel's choice of location for the causeway was affected by the water levels in the marsh at high tide in the early 1970s, and, specifically, that the causeway was redirected to its present location and "placed at the closest point between the high land areas." When asked if the causeway could have been placed in another location, Thomas Pendarvis answered that putting the causeway at the most narrow part of the wetlands was the practical, reasonable, and economically efficient choice made by Tavel at the time.

This dispute arose in 2002 when Cook, Respondents' stepmother, received title to tract A from Butch in a divorce settlement. A drawing completed as part of an appraisal Cook ordered showed that the causeway portion of the road encroached onto tract A. Respondents were unaware of the encroachment until Butch told them that he saw survey flags on the property in early 2003. Before these events, Respondents and Cook believed the road was located entirely on tract B. Respondents now claim an easement over the portion of the road crossing onto tract A.

Respondents filed this action seeking a declaratory judgment for either an easement by necessity or prescription, but later filed an amended complaint substituting an easement by prior use cause of action for easement by necessity. Cook appeals the master's order declaring "that Plaintiffs are entitled to an Easement under either or both theories" of prescriptive easement or easement by prior use. She also appeals the master's acceptance of a plat submitted by Respondents after trial and his use of the plat to define the scope of the easement.

## II. Easement Implied by Prior Use

In *Boyd v. BellSouth Telephone Telegraph Co.*, 369 S.C. 410, 633 S.E.2d 136 (2006), our supreme court set out seven elements a plaintiff must prove in order to establish an easement implied by prior use.

The party asserting the right to an easement implied by prior use must establish the following: (1) unity of title; (2) severance of title; (3) the prior use was in existence at the

time of unity of title; (4) the prior use was not merely temporary or casual; (5) the prior use was apparent or known to the parties; (6) the prior use was necessary in that there could be no other reasonable mode of enjoying the dominant tenement without the prior use; and (7) the common grantor indicated an intent to continue the prior use after severance of title.

369 S.C. at 417, 633 S.E.2d at 139.

■ Cook disputes the master's finding of an easement implied by prior use by arguing that elements five, six, and seven are not met. As to element six, she contends it was not necessary for the causeway to be in its present location. She combines elements five and seven to argue that Tavel could not have intended to continue the prior use of part of tract A when the encroachment onto it was not apparent or known to him. "The determination of the existence of an easement is a question of fact in a law action, . . . and this Court reviews factual issues relating to the existence of an easement under a highly deferential standard." *Inlet Harbour v. S.C. Dep't of Parks, Recreation & Tourism*, 377 S.C. 86, 91, 659 S.E.2d 151, 153 (2008) (internal citation omitted) (citing *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 776 (1976) (providing that questions of fact in a law action are generally reviewed under the "any evidence" standard)). We find evidence in the record to support the master's conclusion that these elements are satisfied.

## A. Necessity

■ The element of necessity was a primary issue in *Boyd*. The plaintiff sought an easement over a driveway across BellSouth's property that provided the only access to the rear entrance of her antique store. 369 S.C. at 414, 633 S.E.2d at 138. The special referee granted BellSouth's motion for summary judgment on the claim for easement implied by prior use, finding specifically that the plaintiff did not meet the element of necessity. 369 S.C. at 416, 633 S.E.2d at 139. This court reversed the special referee, finding "evidence exists within the record indicating use of the driveway to access the rear doors was necessary for the enjoyment of Boyd[']s property." *Boyd v. BellSouth Tel. Tel. Co.*, 359 S.C. 209, 215, 597 S.E.2d 161, 164 (Ct.App.2004). In its decision affirming this

court as to that issue, the supreme court considered what "necessity" requires in the context of an easement implied by prior use. 369 S.C. at 420–22, 633 S.E.2d at 141–42. The supreme court explained that the party seeking the easement need not prove that the prior use was absolutely necessary. 369 S.C. at 421, 633 S.E.2d at 141 (citing 28A C.J.S. *Easements* § 72). Rather, "necessity means 'there could be no other reasonable mode of enjoying the dominant tenement without this easement.'" *Id.* (quoting *Crosland v. Rogers,* 32 S.C. 130, 133, 10 S.E. 874, 875 (1890)). Applying that definition to the facts of *Boyd,* the court acknowledged it was possible for the plaintiff to put in another driveway; however, it found "the evidence also indicat[ed] an alternative driveway to the building would be infeasible, impractical, and very costly." 369 S.C. at 422, 633 S.E.2d at 142.

This court addressed an easement implied by prior use in *Hynes Family Trust v. Spitz,* 384 S.C. 625, 682 S.E.2d 831 (Ct.App.2009). In that case, the plaintiff positioned his storm drainage system to discharge water onto the neighboring defendant's backyard, and then sought an easement implied by prior use. 384 S.C. at 627, 682 S.E.2d at 832. This court upheld the trial court's finding that the necessity element was not met, and explained: "Evidence in the record indicates Hynes could have discharged his gutter water onto his own property without unreasonable burden or expense." 384 S.C. at 633, 682 S.E.2d at 835. Applying the definition of necessity from *Boyd,* this court found the plaintiff failed to satisfy the necessity element because an alternative could be employed "without unreasonable burden or expense." *Id.*

■ The *Boyd* and *Spitz* courts' application of the definition of necessity to the facts of those cases provides us context in which to determine the sufficiency of the evidence in this case. The master found:

> It would necessarily have cost more money, taken greater effort, and therefore would have been impractical in 1974 to construct, move, or relocate the causeway portion and immediately preceding portion of the Access Road further over to the west on Tract B because the causeway would have needed to be much longer and therefore would have cost more money and taken greater effort to build.

There is evidence in the record to support this finding of necessity. The road was the only one in existence in 1974 and remains the only route a vehicle may take from Peters Point Road to Sandy Creek over thirty years later. Thomas Pendarvis testified the causeway's location was dictated by the high land areas in the marsh and that Tavel's choice of location was economically efficient. Cook's argument that the causeway was not the only "reasonable mode of gaining access to and enjoying the property," but rather "the causeway was located where it was out of convenience and not out of necessity," incorrectly focuses on whether there were other suitable locations available for the causeway before 1972 when Tavel built it. As the supreme court stated in *Boyd*, "[t]he necessity element of easement implied by prior use must be determined at the time of the severance." 369 S.C. at 421, 633 S.E.2d at 141. The master properly focused on the fact that the road already existed in 1974 when Tavel divided the property. The master then properly considered whether the alternative of building a new road entirely on tract B was feasible, practical, and cost efficient. *See Boyd*, 369 S.C. at 422, 633 S.E.2d at 142. In other words, the master's inquiry was not to find the most convenient location to build a road in 1974, but rather to determine whether keeping the existing road, as opposed to building a new one entirely on tract B, was "necessary." Because there is evidence in the record to support the master's finding that continuing to use the road met the definition of necessity under *Boyd*, we affirm.

### B. Apparent or Known Use and Intent

■ The fifth element requires that the plaintiff prove the prior use was apparent or known to Tavel, and the seventh element requires proof he intended the use to continue after he conveyed tract B to Respondents in trust. The master found:

> Mr. Tavel's construction and prior use of the Access Road, including the portion on Tract A ..., was obviously known by him and therefore clearly intentional.... Substantial improvements to the Access Road were paid for by funds belonging to a Trust created for the exclusive benefit of Thomas and Richard Pendarvis.... Tavel intended for

> Plaintiffs to continue the prior use of the portion of the
> Access Road on Tract A. . . .

There is ample evidence in the record to support this finding. As to the fifth element, the use of the causeway before severance was apparent and known to Tavel because he used, maintained, and improved the road. Respondents testified to working on the road with Tavel digging ditches and filling in portions of the road after it was built in 1972. Because they worked on and traversed the road for two years prior to severance, the prior use of the causeway was apparent or known to the parties.[2]

█ As to the seventh element, there is evidence that Tavel intended for Respondents to continue the prior use after severance. First, access to Sandy Creek over this road is an integral part of what Tavel wanted Respondents to enjoy from their use and ownership of tract B. Ann Pendarvis testified that Tavel wanted Respondents to maintain the road and "had planned to convey the property directly across the road which bordered Sandy Creek to Thomas and Richard, in the hopes that some day when they got grown, that they would build a cabin or some kind of little place." Additionally, Tavel's conveyance of the property and help in improving the road and building the dock which the road led to demonstrates an intent that Respondents continue to use the road to access the dock. Accordingly, we find sufficient evidence in the record to support the master's finding that the fifth and seventh elements are met.

█ Cook argues the easement nevertheless fails because she claims Tavel did not realize the road encroached onto tract A. She contends Tavel "could not have indicated an intent to continue a prior use after severance of title that he did not know existed." We disagree. Contrary to Cook's argument, elements five and seven do not contemplate that Tavel knew the extent, or even the existence, of the encroachment onto tract A. Rather, the focus of those two elements is on use. "The purpose of an implied easement is to give effect to the intentions of the parties to a transaction. . . ." *Inlet Harbour,*

---

2. The word "parties" in the fifth element of *Boyd* refers to the parties to the transaction dividing the property, not necessarily the parties to the lawsuit.

377 S.C. at 91, 659 S.E.2d at 154. The master found Tavel knew Respondents used the road, and intended that they do so in the future. Tavel's supposed lack of knowledge of the causeway's encroachment onto tract A does not defeat his intent that the prior use of the road continue.

Cook's argument essentially asks us to impose a new element on easement implied by prior use: that the party seeking the easement must prove the parties to the transaction dividing the property knew of the existence and extent of encroachment. A simple illustration demonstrates the proposed new element is unworkable. In many cases, the dispute that leads to litigation arises years after the transaction dividing the united parcel of land. In *Boyd,* for example, the portion ultimately owned by the plaintiff had been sold by BellSouth to the City of Denmark in 1988. 369 S.C. at 414, 633 S.E.2d at 138. It is highly likely that by 2001,[3] when the dispute arose in *Boyd,* there were no employees of BellSouth or Denmark still available who knew, or if they once knew who remembered, where the property line was in relation to the driveway. Under Cook's theory of this appeal, BellSouth could have defended the plaintiff's claim by requiring proof that BellSouth and Denmark knew not only of the use, but also of the encroachment, at the time the lot was sold. Such a requirement is unwarranted, and would render many valid claims not provable simply because no witnesses are available to testify to what these parties knew.

Even so, we will not presume Tavel was unaware of the encroachment. Rather, because Tavel divided the property and executed the deed for tract B, the law presumes he was aware of the location of the property lines the deed created. *See Binkley v. Rabon Creek Watershed Conservation Dist. of Fountain Inn,* 348 S.C. 58, 71, 558 S.E.2d 902, 909 (Ct.App. 2001) ("Notice of a deed is notice of its whole contents ... and it is also notice of whatever matters one would have learned by any inquiry which the recitals of the instrument made it one's duty to pursue." (quoting 66 C.J.S. *Notice* § 19 (1998)));

---

3. The dispute arose in *Boyd* in late 2001 when BellSouth decided in response to the September 11 terrorist attacks to erect a fence around its building on the adjoining lot, thereby blocking the driveway used by Boyd to access the rear of her building. 369 S.C. at 414, 633 S.E.2d at 138.

*see also S.C. Dep't of Transp. v. Horry County,* 391 S.C. 76, 705 S.E.2d 21 (2011) (Shearouse Adv. Sh. No. 2 at 18–19) (citing *Binkley* for the proposition that constructive notice of recorded instruments forecloses a claim of lack of knowledge). Nothing was presented by either side to overcome this presumption.[4]

Because we find the master properly analyzed evidence of use instead of the parties' knowledge of encroachment in regard to the fifth and seventh elements, and because there is evidence in the record to support his finding that those two elements were met, we affirm.

### III. Adoption of Post–Trial Plat

Over a year after trial, Respondents filed a motion to introduce a plat into evidence whose purpose was "to show access through Tract A for the benefit of Tract B" and "[i]n order for the property records for the separate properties presently owned by [Respondents] and [Cook], respectively, to accurately reflect the location of the easement." The master incorporated the plat by reference into the order granting the easement to Respondents. The order further stated:

> In the event [Cook] objects to the location of this easement as shown by this plat, she may submit her own plat establishing the precise location of where the actual easement exists within thirty (30) days of this order, along with any further relief she may seek under Rule 59(e), SCRCP.

Cook filed a motion to reconsider, alter, or amend the order under Rules 52(b) and 59(e), SCRCP, which included an objection to Respondents' plat and a request to replace it with an attached plat. Cook argued that Respondents' plat "does not reflect the applicable setbacks that define the developable footprint" on the waterfront of her property and "does not accurately reflect the location and encroachment of the access road in relation to the buildable footprint." She now appeals the master's denial of her motion.

The scope of an easement is a question in equity as to which "an appellate court may find facts in accordance with its own view of the preponderance of the evidence." *Inlet Har-*

---

4. Tavel died in 1983 and thus did not testify.

*bour,* 377 S.C. at 91, 659 S.E.2d at 154. We have considered all the evidence in the record concerning the location of the easement, and agree with the master's decision to adopt Respondents' plat.

## IV. Conclusion

We affirm the easement implied by prior use, and adopt Respondents' plat submitted after trial. Because we affirm the finding of an easement implied by prior use, we do not reach the existence of a prescriptive easement. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (recognizing that an appellate court need not address remaining issues when resolution of one issue is dispositive).

**AFFIRMED.**

SHORT, J., and CURETON, A.J., concur.