693 S.E.2d 7

**Toni M. WARD and J.W. Ward, Respondents,**

v.

**Toni Cooke EVANS, David A. Nexsen, Winyah Nursing Home, LLC, and Sentry Bank and Trust, Defendants,**

**of whom Toni Cooke Evans and David A. Nexsen are Appellants.**

**No. 4653.**

Court of Appeals of South Carolina.

Heard Nov. 16, 2009.

Decided March 10, 2010.

Rehearing Denied May 27, 2010.

E. Leroy Nettles, Sr., and Marian D. Nettles, both of Lake City, for Appellants.

Brooks R. Fudenberg, of Mt. Pleasant, William M. O'Bryan, Jr. of Kingstree, and Gregory B. Askins, of Hemingway, for Respondents.

SHORT, J.

Toni Cooke Evans and David A. Nexsen (collectively, Appellants) appeal from the special referee's order awarding an easement to Toni M. Ward and J.W. Ward (collectively, Respondents), arguing the special referee erred in finding (1) Respondents have a thirty-foot easement by express grant across Evans' land; (2) Respondents have an easement by necessity across the lands owned by Appellants; (3) the paved portion of Nathan Road running adjacent to Evans' tract of land is a public road; and (4) the initial easement did not extinguish through the doctrine of merger. Appellants also argue the special referee considered improper factors in his final order. We affirm.

## FACTS

Respondents sought to establish an easement across land owned by Evans for ingress and egress to their 4.39–acre tract of land. Nexsen is the caretaker of Evans' land and also has an oral lease of hunting rights on Evans' land.

### I.  Deeds

In a deed dated June 4, 1963, A.M. Schreiberg conveyed a 4.39–acre tract of land in the center of a parcel of land known as "Smith Farm" to James Hinnant, Frank McGill, J.D. O'Bryan, Jr., Moses Collis, and Charles Moore, all as Trustees.[1]  The deed stated Schreiberg wanted the "land be converted into a *recreation park* for the benefit of the ... residents of Kingstree and immediate community." (Emphasis added).  The deed further stated it was Schreiberg's "wish and desire to convey said tract or parcel of land to Trustees to be held and developed for [a recreation park] so long as the same is used therefore."  However, the deed provided the following condition in paragraph number four:

> [I]f at any time said premises are not used for the purpose herein mentioned for a period of two successive years, then in such case the said premises shall revert to and reinvest in [Schreiberg], his heirs and assigns, freed and discharged of the trusts, limitations and provisions herein mentioned.

The deed further provided for a right-of-way for the construction of a road or highway for ingress and egress to the 4.39–acre parcel of land:

> [A] right-of-way thirty feet in width for the construction of a road or highway over the adjoining lands of [Schreiberg] from the lands of the Estate of T.M. Gilland on the South to the Kingstree–Sumter Highway on the North, or Northeast as a means of ingress and egress to the said above described premises along the general location of the present road between the points above mentioned, with the right,

---

1.  This was a small parcel out of hundreds of acres of land owned by Schreiberg.  The deed was recorded in the Office of the Clerk of Court for Williamsburg County in Deed Book "A–69" at page 210.  The original Schreiberg deed and plat referenced 4.39 acres; however, the new plat drawn on March 7, 2006 for Respondents referenced 4.38 acres.  The discrepancy is due to the use of different surveying equipment.  For the purpose of this opinion, we reference the parcel as 4.39 acres to be consistent with the original deed.

however, to said Trustees to have said road relocated as may be necessary for the purpose of making a more direct line between the points mentioned. With the right power and privilege to said Trustees to construct, or have constructed, a road or highway on and along the line so laid out as aforesaid.[2]

The deed referenced a plat made on May 23, 1963 and recorded in the Office of the Clerk of Court for Williamsburg County.[3] The plat shows the road running beside the property and ending at Sumter Highway. Schreiberg died testate on May 7, 1987. A review of the Warrant of Appraisements filed with the Probate Court indicated the 4.39–acre parcel was not included in or made a part of Schreiberg's estate. The 1963 deed provided if the property was not used as a "recreation park" for a period of two successive years, the title was to revert to and reinvest in Schreiberg. Therefore, on September 7, 2001, as a result of the property having "not been used for recreational purposes for a number of years," Moore, the last living Trustee named under the June 4, 1963 deed, deeded the 4.93 acres in fee simple for the sum of five dollars to Allan Levin and Mitzi Kirshtein, who were the residuary beneficiaries under Schreiberg's Will.[4] The 2001 deed incorporated the language from the 1963 deed, and specifically included the thirty-foot right-of-way as a means of ingress and egress to the property.[5]

Levin and Kirshtein sold the 4.39 acres in fee simple to Respondents on January 26, 2006. The deed referenced the 1963 Schreiberg deed and the 2001 deed from Moore to Levin and Kirshtein. The deed also incorporated the language from the 1963 deed, and specifically included the thirty-foot right-of-way as a means of ingress and egress to the property.[6] On

---

2. The deed allowed the Trustees to relocate the road as necessary to make a direct line, which was done at some point.

3. The plat was recorded in Plat Book "11" at page 94.

4. The 4.93 acres was assigned the tax map number of 45–128–010.

5. The deed was recorded in the Office of the Clerk of Court for Williamsburg County in Deed Book "A–488" at page 223.

6. The deed was recorded in the Office of the Clerk of Court for Williamsburg County in Deed Book "A–595" at page 239.

March 21, 2006, a new plat drawn for Respondents was recorded in the Office of the Clerk of Court for Williamsburg County.[7] The plat shows a paved county road S–45–643, "Nathan Road," running parallel to Respondents' 4.39–acres parcel of land.

Prior to receiving the 4.39 acres in 2001, Levin and Kirshtein received four other parcels of land on May 29, 1987 from Schreiberg's Will: 158 acres, 44 acres, 1 lot, and 18 acres.[8] On March 10, 1993, Levin and Kirshtein sold the forty-four-acre parcel to Aubrey and Delellis Judy.[9] On November 21, 1994, the Judys sold the land to Kingstree Forest Products, which was owned by Ronald Hammon.[10] The deed stated the conveyance was "made subject to easements and restrictions of record and otherwise affecting the property." Kingstree Forest Products then sold the parcel, among other land, to Richard Carlyle Cooke on July 29, 1998.[11] On February 10, 2003, Cooke deeded the land to Evans.[12]

## II. Easement

At some point in time, the thirty-foot easement referenced in the 1963 deed was relocated, changed to sixty feet, paved, and became known as Nathan Road. Jean Brown, who lives on Nathan Road, testified that when she was young, everyone used the road to go to the river to swim, and she remembered the road always being a public road. Aubrey Judy also

---

7. The plat was recorded in Book "S–1128" at page 4–A.

8. These parcels of land were assigned tax map numbers of 45–128–001; 45–128–009; 45–128–012; and 45–128–015.

9. The deed was recorded in the Office of the Clerk of Court for Williamsburg County in Deed Book "A–303" at page 058; however, the record on appeal does not contain a copy of this deed.

10. The deed was recorded in the Office of the Clerk of Court for Williamsburg County in Deed Book "A–335" at page 014.

11. The deed was recorded in the Office of the Clerk of Court for Williamsburg County in Deed Book "A–414" at page 044.

12. Appellant Evans was formerly married to Richard Cooke and received the land in their divorce. The deed was recorded on February 26, 2003 in the Office of the Clerk of Court for Williamsburg County in Book "A–547" at page 157.

testified the road was used by the public. On September 16, 1976, the South Carolina Department of Transportation (SCDOT) added the road to the State Highway System. Robert Cherinko, who also lives on Nathan Road, testified that SCDOT maintained the paved portion of the road and the county plowed the dirt road. However, on September 16, 1993, at the request of the Legislative Delegation, SCDOT took action to remove a section of Nathan Road from the State Highway System.[13]

After he bought the land in 1994, Hammon placed a cable across the road. He testified that no one had access to the property except the people who had property there. He said the public was not allowed to use the road but it "wasn't a big issue" to him that some people used it, and he did not have the land posted. Cooke maintained the cable after purchasing the land from Hammon in 1998, but he had a gate installed across the road after his father died on the property. He also posted the land. Toni Ward testified the gate is almost physically impossible to go around because it continues deep into the woods and barbed wire is strung through the trees to prevent people from walking around the gate. She testified that before the road was gated, people used Nathan Road for driving, walking, and biking. Levin also testified he thought the public used the road prior to the gate being placed in the road. Brown further testified that pedestrians still used the road even after the cable was in place and she was never told she was trespassing when she used the road. Cherinko testified the whole neighborhood still used the road after the cable was put up, and he was never told he was trespassing.

Respondents testified they contacted Nexsen in 2002 to have the gate removed to access their property, and Nexsen told Respondents he did not have to move the gate because he owned the gate, the road, and all the property behind it. However, within a few days of a second conversation about moving the gate, Nexsen moved the gate down the road, approximately fifty feet north of the property line. After the gate was moved, Respondents purchased the additional 4.39–

---

**13.** In a letter dated June 8, 2007, the Kingstree Town Manager, Cornelia Bell, informed Respondents' attorney the Town of Kingstree had not taken any action to close the road.

acre parcel of land from Levin and Kirshtein. The gate's new location was still blocking the paved road leading to Respondents' new land. J.W. Ward testified he asked Nexsen if he could hang a lock on the gate so he could access his property; however, Nexsen told him "to keep [his] hands off of it or he would put the sheriff on [him]." Thereafter, Respondents had a new survey drawn and hired an attorney to handle the dispute.

## III. Litigation

On October 26, 2006, Respondents filed a complaint against Appellants arguing (1) the roadway is a public roadway; (2) they have an express grant of easement to the road; (3) they are entitled to a prescriptive easement to the road; (4) they are entitled to an easement by necessity; and (5) they are entitled to an easement by implied use.[14] Respondents sought an order from the court requiring the immediate removal of the gate, and enjoining Appellants from further blocking the roadway. Respondents also sought monetary damages in the amount of $10,000 as a result of being unable to make improvements to their property.

The complaint was originally filed in the court of common pleas in Williamsburg County; however, on Respondents' motion, the parties consented to refer the case to a special referee, with direct appeal to the court of appeals. A two-day trial was held on April 21, 2008 and May 8, 2008. On June 9, 2008, the special referee filed his order finding Respondents are the owners of the 4.39-acre parcel of land, together with a thirty-foot right-of-way, via an easement by express grant and an easement by necessity. The special referee also found the paved extension of Nathan Road was a public road to the end of the pavement. As a result, he ordered Appellants to remove the gate and fence blocking the easement. This appeal followed.

---

14. Winyah Nursing Home, LLC and Sentry Bank and Trust were also named as defendants because Respondents believed they "may claim an interest in or a lien upon the land surrounding or underlying the easement." However, neither of these defendants are a party to this appeal.

## STANDARD OF REVIEW

"The determination of the existence of an easement is a question of fact in a law action and subject to an any evidence standard of review when tried by a judge without a jury." *Slear v. Hanna,* 329 S.C. 407, 410, 496 S.E.2d 633, 635 (1998). "In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings." *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

## LAW/ANALYSIS

Appellants argue the special referee erred in finding Respondents are the owners of a thirty-foot easement by express grant across Evans' land because the easement conveyed in the original deed automatically terminated two years after the property ceased to be used as a ballpark. We disagree.

An easement is a right given to a person to use the land of another for a specific purpose. *Murrells Inlet Corp. v. Ward,* 378 S.C. 225, 232, 662 S.E.2d 452, 455 (Ct.App.2008). An easement may arise in three ways: (1) by grant; (2) from necessity; and (3) by prescription. *Frierson v. Watson,* 371 S.C. 60, 67, 636 S.E.2d 872, 875 (Ct.App.2006). "A reservation of an easement in a deed by which lands are conveyed is equivalent, for the purpose of the creation of the easement, to an express grant of the easement by the grantee of the lands." *Id.* (quoting *Sandy Island Corp. v. Ragsdale,* 246 S.C. 414, 419, 143 S.E.2d 803, 806 (1965)). When land is subdivided, platted into lots, and sold by reference to the plats, a buyer acquires a special property right in the roads shown on the plat. *Ward,* 378 S.C. at 233, 662 S.E.2d at 455–56. Further, "[i]f the deed references the plat, the grantee acquires a private easement for the use of all streets on the map." *Id.* at 233, 662 S.E.2d at 456 (quoting *Davis v. Epting,* 317 S.C. 315, 318, 454 S.E.2d 325, 327 (Ct.App.1994)). Once an easement is referenced in a plat, the easement is dedicated to the use of the owners of the lots, their successors in title, and to the public in general. *Id.* The purpose of the recording statute is to protect a subsequent buyer without notice; therefore, once

recorded, deeds and easements are valid to subsequent purchasers without notice. *Id.* at 233, 662 S.E.2d at 455.

█ The 1963 deed specifically provided for a thirty-foot right-of-way for the construction of a road or highway for ingress and egress to the property. Additionally, the deed referenced a plat dated May 23, 1963, which shows the road running beside the property and ending at Sumter Highway. Thus, the 1963 deed created a thirty-foot easement by express grant across Evans' land. *See Frierson,* 371 S.C. at 67, 636 S.E.2d at 875.

█ However, the 1963 deed provided that if the property was not used as a *recreation park* for a period of two successive years, the title was to revert to and reinvest in Schreiberg. As a result, Appellants argued the easement conveyed in the original deed automatically terminated two years after the property ceased to be used as a *ballpark,* which they assert was about 1981. Therefore, Appellants asserted the 4.39 acres, including the thirty-foot easement, reverted to Schreiberg at that time, and thereafter, the land was conveyed to the Judys in 1993.

The evidence presented by Appellants only pertains to when the land may have ceased to be used as a ballpark. In a letter dated July 27, 2006, Lee Lineberger, Vice President of Customer Services at Santee Electric Cooperative, Inc., stated its records indicated it supplied electrical service to the ballpark in 1980 and at least a portion of 1981.[15] Jean Brown, who lives on Nathan Road, testified she thought it was used as a ballpark until 1983 and later because her nephew played there. Waylon Carter, who did contract work for Carlyle Cooke, testified his children played ball at the ballpark in 1979 or 1980. Danny Brown, the building official for Williamsburg County, testified he played ball at the park in the 1970s and early 1980s. Respondents testified they did not know when Schreiberg Park ceased to be used as a ballpark, but it was not being used as one when they moved there in 1994. Aubrey Judy, who had previously owned Evans' land, testified during his deposition that the ballpark had been discontinued

---

**15.** Schreiberg granted Santee Electric Cooperative a utilities easement over the land on March 10, 1976.

for several years when he and his wife purchased the property in 1993, but he did not know the exact date it ceased being used. Robert Cherinko, who also lives in Nathan Road, testified the ballpark never closed, but that people just stopped using it at some point. Levin testified he did not know when the ballpark ceased being used. Carolyn Lesmeister, who did the title abstract, testified she did not see anything in the public record indicating when Schreiberg Park had ceased to be used as a recreational park other than the 2001 deed to Levin and Kirshtein, which stated the land had "not been used for recreational purposes for a number of years."

In his order, the special referee noted that "some portion of the subject lot was used for a ballpark." However, the deed stated the land was to be used as a recreation park, not just as a ballpark. To determine what uses the deed may have intended by stating the land was to be used as a recreation park, the special referee looked to the American Heritage Dictionary, which defined "recreation" as "refreshment of one's mind or body after labor through diverting activity." [16] Thus, he determined the term recreation park was a broad definition that could include using the land as a ballpark, but the land could also be used for walking, "tennis, track, nature watching, or sundry other recreational purposes for the benefit of the residents of Kingstree and immediate community."

While the evidence presented by Appellants may have established when the land ceased to be used as ballpark, it fails to prove when the 4.39 acres ceased to be used as a recreation park, the broader definition provided in the 1963 deed. Therefore, we find Appellants failed to meet their burden of proof, and we affirm the special referee's determination that Respondents are the owners of the 4.39–acre parcel, including the thirty-foot right-of-way, which is the paved extension of Nathan Road. Because we affirm the special referee's result that Respondents are the owners of the 4.39–acre parcel and thirty-foot easement, we need not address Appellants' remaining arguments. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999)

---

16. The special referee also noted the dictionary definition of "recreation" gave the adjective form of the word as "recreational."

412

(holding an appellate court need not review remaining issues when its determination of another issue is dispositive of the appeal).

## CONCLUSION

Accordingly, the special referee's order is

**AFFIRMED.**

THOMAS and KONDUROS, JJ., concur.