781 S.E.2d 720

**David R. GOOLDY, Respondent,**

v.

**THE STORAGE CENTER–PLATT SPRINGS, LLC, Appellant.**

**Appellate Case No. 2014–000741.**
**No. 5366.**

Court of Appeals of South Carolina.

Heard Nov. 4, 2015.
Decided Dec. 9, 2015.
Rehearing Denied Feb. 19, 2016.

Robert E. Stepp and Bess Jones DuRant, both of Sowell Gray Stepp & Laffitte, LLC, of Columbia, for appellant.

James Randall Davis, of Davis Frawley Anderson McCauley Ayer Fisher & Smith, LLC, of Lexington, for respondent.

THOMAS, J.

The Storage Center—Platt Springs, LLC (Storage Center) appeals the master-in-equity's order finding David R. Gooldy had easement rights over Storage Center's property and awarding Gooldy actual and punitive damages. On appeal, Storage Center argues the master erred in (1) finding the existence of an implied easement based on a deed that described the property by referencing a plat depicting a "50' Road" notation outside the boundary lines of the property conveyed, (2) finding the existence of an implied easement when the common grantor's representative testified there was

no intent to create an easement or road, and (3) awarding actual and punitive damages. We reverse.

## FACTS AND PROCEDURAL HISTORY

Gooldy and Storage Center own adjacent properties in Lexington County. Gooldy's tract consists of .68 acres (the .68 acre tract) and Storage Center's tract consists of 7.35 acres (the 7.35 acre tract). Storage Center's property surrounds Gooldy's property like a horseshoe: it abuts Gooldy's property on the southern, western, and northern borders. Both properties border S.C. Highway 6 on their eastern boundaries. Gooldy claims to have an easement over an alleged road on Storage Center's property.

### 1. Background Information

In 1974, Congaree Associates [1] purchased a 500–acre tract of land containing the properties at issue. In 1983, Congaree recorded a subdivision plat for Westchester Phase I, containing thirteen lots bordering Highway 6 to the east and what would later become the .68 acre tract to the north. Robert Collingwood was the surveyor for the Westchester Phase I plat. Subsequently, Congaree commissioned Collingwood to prepare a preliminary plat for a proposed subdivision called Westchester Phase II. This plat depicts a 50–foot road abutting the southern border of what would later become the .68 acre tract. The Westchester Phase II plat was never recorded and the subdivision was never developed.

In 1985, James Loflin, Congaree's agent and employee, hired Collingwood to prepare a plat (the Loflin plat) of the .68 acre tract. The Loflin plat depicts only the .68 acre tract; neither Westchester Phase I nor the 7.35 acre tract is depicted. The plat includes the notation, "50′ road" outside the southern boundary of the .68 acre tract, on what would later become the 7.35 acre tract. The 50–foot road notation is not listed as an easement and the length of the road is not discernible from the face of the plat. In 1986, Congaree, by its general partner Carroll McGee, conveyed the .68 acre tract to Loflin by a deed that referenced the Loflin plat. Every

---

1. Congaree is the common grantor of the .68 acre and 7.35 acre tracts.

deed in the chain of title for the .68 acre tract incorporates the Loflin plat.

Gooldy purchased the .68 acre tract on January 24, 2002, and used the area depicted as a 50–foot road on the Loflin plat to access his property. In describing the .68 acre tract, Gooldy's deed reads as follows:

All those certain piece, parcel or lot of land, with all improvements thereon, situate, lying and being on the western side of S.C. Highway No. 6, approximately 580 feet south of the intersection of Platt Springs Road and S.C. Highway No. 6, near the town of Lexington, in the County of Lexington, State of South Carolina, and being shown and designated on [the Loflin plat]. The within described property contains .68 acre more or less.

Storage Center purchased the 7.35 acre tract on September 27, 2007. The deed to Storage Center's property does not reference the Loflin plat; instead, it references a plat (the Strasburger plat) that does not depict a 50–foot road on Storage Center's property. The Strasburger plat classifies the alleged road as a "parking and gravel drive encroachment." After purchasing the 7.35 acre tract, a Storage Center representative and Gooldy unsuccessfully attempted to negotiate a "shared access agreement" for the strip of land Gooldy used as a driveway. As a result, in 2009, Storage Center barricaded the driveway.

## 2. Procedural History

On February 1, 2010, Gooldy filed a complaint against Storage Center, seeking a declaratory judgment, injunctive relief, and damages. With the parties' consent, the circuit court referred the case to the master. Thereafter, both parties filed motions for summary judgment. In support of its motion, Storage Center filed an affidavit from Loflin, who attested the 50–foot road shown on the Loflin plat did not exist, was not part of the property he owned, and was not intended to create an easement. Loflin stated he never received an easement over the 7.35 acre tract.

The master denied the cross motions for summary judgment and the case proceeded to trial. At trial, Gooldy testified that after speaking with the seller's realtor and reviewing

the Loflin plat, he believed he had an easement over the 7.35 acre tract for a driveway, and he relied on that belief in purchasing the property. Gooldy explained that as a result of Storage Center's barricade, he had to close his business for one week to build a new driveway. He claimed it cost $10,000 to construct the new driveway and attributed half that cost to lost income.

McGee testified Congaree never installed the road in question. He acknowledged Congaree commissioned a plat for Westchester Phase II; however, he noted the plat was never recorded because the project was too costly. McGee testified Congaree did not intend to create any easement rights in conveying the .68 acre tract to Loflin. More specifically, McGee stated Congaree did not intend to convey any property outside the boundaries of the .68 acre tract depicted in the Loflin plat. McGee admitted he reviewed the Loflin plat before conveying the property to Loflin but stated he never gave Loflin permission to use the alleged 50–foot road. Additionally, McGee noted the Strasburger plat did not depict a road on the 7.35 acre tract because the road did not exist.

Charles Meeler, the surveyor who prepared the Strasburger plat, testified there was no road abutting the .68 acre parcel. Meeler explained he included the "parking and gravel drive encroachment" notation on the plat because he believed Gooldy was using Congaree's property as a driveway. Meeler did not include a 50–foot road on the Strasburger plat because after reviewing the Loflin plat and other county and state records, in his professional opinion, no road existed.

Rosser Baxter, an expert surveyor, opined the 50–foot road notation on the Loflin plat is not a plat of a road, does not create a road, and does not mean a road actually exists. Baxter testified the Loflin plat is a survey only of the .68 acre tract and nothing outside the boundaries of the tract was included in the survey. He stated the Loflin plat was "an individual lot plat," not a "subdivision plat." Baxter concluded, after reviewing the Loflin plat and public records, the 50–foot road designation was erroneously included on the Loflin plat.

The master concluded Gooldy was entitled to an easement because his deed referenced a plat showing the .68 acre tract

bordered by a 50–foot road. The master also concluded evidence surrounding the initial conveyance of the .68 acre tract demonstrated Congaree and Loflin intended to create an easement over the road. Additionally, the master awarded Gooldy $2,500 for lost income and $7,500 in punitive damages. This appeal followed.

## STANDARD OF REVIEW

"The determination of the existence of an easement is a question of fact in a law action, and this [c]ourt reviews factual issues relating to the existence of an easement under a highly deferential standard." *Inlet Harbour v. S.C. Dep't of Parks, Recreation & Tourism*, 377 S.C. 86, 91, 659 S.E.2d 151, 153 (2008) (citation omitted). "In an action at law tried without a jury, the judge's findings of fact will not be disturbed on appeal unless there is no evidentiary support for the judge's findings." *Murrells Inlet Corp. v. Ward*, 378 S.C. 225, 231, 662 S.E.2d 452, 455 (Ct.App.2008).

## LAW/ANALYSIS

Storage Center argues the master erred in finding (1) the existence of an easement based on the deed's reference to the Loflin plat and (2) that Congaree and Loflin intended to create an easement in favor of the .68 acre tract. We agree.

"An easement is a right given to a person to use the land of another for a specific purpose." *Bundy v. Shirley*, 412 S.C. 292, 304, 772 S.E.2d 163, 169 (2015). "Easements can arise by both express creation and by implication." *Inlet Harbour*, 377 S.C. at 91, 659 S.E.2d at 154. "A reservation of an easement in a deed by which lands are conveyed is equivalent, for the purpose of the creation of the easement, to an express grant of the easement by the grantee of the lands." *Ward v. Evans*, 387 S.C. 401, 409, 693 S.E.2d 7, 11 (Ct.App. 2010). "[W]here a deed describes land as is shown as a certain plat, such becomes a part of the deed." *Murrells Inlet*, 378 S.C. at 232, 662 S.E.2d at 455 (alteration in original).

"Although the incorporation by reference in a deed to a plat or map may create an easement by express grant, an easement by reference to a map or pla[t] is not an express easement but rather an easement by implication." 28A C.J.S.

*Easements* § 96 (2008) (footnote omitted). "The creation of an implied easement generally requires that the facts and circumstances surrounding the conveyance, the property, the parties, or some other characteristic demonstrate that the objective intention of the parties was to create an easement." *Inlet Harbour,* 377 S.C. at 92, 659 S.E.2d at 154. "The purpose of an implied easement is to give effect to the intentions of the parties to a transaction, and because the implication of an easement in a conveyance goes against the general rule that a written instrument speaks for itself, implied easements are not favored." *Id.* at 91–92, 659 S.E.2d at 154.

"[T]he intentions of the parties to the transaction are the overriding focus when examining implied easements." *Id.* at 92, 659 S.E.2d at 154. However, our courts have "developed various presumptions regarding the creation of implied easements in certain circumstances." *Id.* "One such presumption arises when an owner subdivides his land and has the land platted into lots and streets." *Id.* We have "recognized the general rule that when an owner conveys subdivided lots and references the plat in the deed, the owner grants the lot owners an easement over the streets appearing in the plat." *Id.* Thus, "[o]nce an easement is referenced in a plat, the easement is dedicated to the use of the owners of the lots, their successors in title, and to the public in general." *Ward,* 387 S.C. at 409, 693 S.E.2d at 11. "As to the grantor, who conveyed the property with reference to the plat, and the grantee and his successors, the dedication of the easement is complete at the time the conveyance is made." *Murrells Inlet,* 378 S.C. at 233, 662 S.E.2d at 456.

Although a grantee is entitled to a presumption that a grantor intended to create an easement over a road appearing in a plat referenced in a deed, the presumption is not a rigid one. *See Inlet Harbour,* 377 S.C. at 93, 659 S.E.2d at 155 (discussing "problems that might occur if [appellate courts] were to apply a rigid presumption based solely upon particular geography or land division"). The presumption may be rebutted by evidence demonstrating the parties did not intend to create an easement. *See id.* ("[T]o the extent the [appellant] urges this [c]ourt to ignore everything except

the deed's reference to a residential subdivision plat, this argument fails to remain true to the principles underlying implied easements."); *Murrells Inlet*, 378 S.C. at 234, 662 S.E.2d at 456 ("*Absent evidence of the seller's intent to the contrary,* a conveyance of land that references a map depicting streets conveys to the purchaser, as a matter of law, a private easement by implication with respect to those streets, whether or not there is a dedication to public use." (emphasis added)).

Furthermore, a plat "is not an index to encumbrances." *Bennett v. Investors Title Ins. Co.*, 370 S.C. 561, 575, 635 S.E.2d 660, 668 (Ct.App.2006) (emphasis omitted) (quoting *Lancaster v. Smithco, Inc.*, 246 S.C. 464, 469, 144 S.E.2d 209, 211 (1965)). A deed that references a plat merely "for descriptive purposes does not incorporate a notation thereon as to an easement held by a third party so as to exclude such easement from the covenant against encumbrances in the absence of a clear intention that it so operate." *Id.* (emphasis omitted) (quoting *Lancaster*, 246 S.C. at 469, 144 S.E.2d at 211). Thus, in determining the existence of an easement, "[o]ur guidepost must be what the parties intended, and the best evidence of the parties' intentions are the facts and circumstances surrounding the conveyance." *Inlet Harbour*, 377 S.C. at 93, 659 S.E.2d at 155.

### 1. Presumption of an Easement

We find the master erred in determining Gooldy was entitled to the presumption of an easement based on the deed's reference to the Loflin plat. We are mindful of the general rule "that when an owner conveys subdivided lots and references the plat in the deed, the owner grants the lot owners an easement over the streets appearing in the plat." *Id.* at 92, 659 S.E.2d at 154. Nonetheless, our courts disfavor implied easements "because the implication of an easement in a conveyance goes against the general rule that a written instrument speaks for itself." *Id.* at 91–92, 659 S.E.2d at 154.

Both *Lancaster* and *Bennett* make clear that a plat "is not an index to encumbrances," and a deed that references a plat "for descriptive purposes does not incorporate a notation thereon as to an easement held by a third party so as to

exclude such easement from the covenant against encumbrances in the absence of a clear intention that it so operate." *Lancaster,* 246 S.C. at 469, 144 S.E.2d at 211; *Bennett,* 370 S.C. at 575, 635 S.E.2d at 668. In the instant case, Gooldy's deed references the Loflin plat in a paragraph describing the .68 acre tract. The paragraph does not provide the metes and bounds of the property. However, the sentence following the reference to the Loflin plat states, "The within *described* property contains .68 acre more or less." (emphasis added). We find this sentence refers to the property *described* in the Loflin plat. In our view, the deed references the Loflin plat for descriptive purposes—to show the metes and bounds of the .68 acre tract—not for the purpose of granting an easement in favor of the .68 acre tract over an alleged road depicted outside the boundaries of the property. Accordingly, we hold the record does not support the master's finding that Gooldy was entitled to the presumption of an easement because his deed referenced the Loflin plat. *See Inlet Harbour,* 377 S.C. at 91, 659 S.E.2d at 153 ("The determination of the existence of an easement is a question of fact in a law action, and this [c]ourt reviews factual issues relating to the existence of an easement under a highly deferential standard." (citation omitted)).

### 2. Intent Analysis

We find the master also erred in determining the evidence surrounding the initial conveyance of the .68 acre tract demonstrated the parties' intent to create an easement. "The creation of an implied easement generally requires that the facts and circumstances surrounding the conveyance, the property, the parties, or some other characteristic demonstrate that the objective intention of the parties was to create an easement." *Id.* at 92, 659 S.E.2d at 154. In evaluating the parties' intent, we note "the best evidence of the parties' intentions are the facts and circumstances surrounding the conveyance." *Id.* at 93, 659 S.E.2d at 155.

First, uncontroverted evidence demonstrates the parties to the initial conveyance did not intend to create an easement. McGee testified Congaree did not intend to create any easement rights when it conveyed the .68 acre tract to Loflin. He stated Congaree did not intend to convey any property outside

the boundary lines of the .68 acre tract depicted on the Loflin plat. He also claimed Congaree never gave Loflin permission to use the strip of land depicted as a 50–foot road. Similarly, Loflin attested the 50–foot road shown on the Loflin plat did not exist, was not part of the property he owned, and was not intended to create an easement. Loflin stated he never received an express or implied easement over the 7.35 acre tract. Accordingly, the testimony of the parties to the initial conveyance demonstrates neither party intended to create an easement.

Second, the deed itself does not manifest the parties' intent to create an easement. We recognize "[r]ecordation of a plat containing an easement *may* be sufficient to show that the owner intended to dedicate that easement." *Murrells Inlet*, 378 S.C. at 234, 662 S.E.2d at 456 (emphasis added). However, recordation of the Loflin plat is not dispositive of the parties' intent in this case. *See Inlet Harbour*, 377 S.C. at 93, 659 S.E.2d at 155 ("[T]o the extent the [appellant] urges this [c]ourt to ignore everything except the deed's reference to a residential subdivision plat, this argument fails to remain true to the principles underlying implied easements."). As previously discussed, Gooldy's deed incorporates the Loflin plat only to describe the metes and bounds of the property, not to create an easement in an alleged road depicted outside those boundaries.

Third, although the master noted the unrecorded Westchester Phase II plat depicted a road in the same location as the Loflin plat, Congaree never developed Westchester Phase II, and McGee testified Congaree never installed the road depicted in the Westchester Phase II plat. Indeed, no recorded plat—other than the Loflin plat—depicts the road Gooldy was using as a driveway. Moreover, Meeler and Baxter—both surveyors who reviewed the properties, Loflin plat, and other public records—testified no road existed in the area Gooldy claimed an easement.

Based on our analysis of the facts and circumstances surrounding the conveyance, the property, the parties, and other characteristics, we find there is no evidence to support the master's conclusion that Congaree and Loflin intended to create an easement. Accordingly, we reverse the master's

order finding Gooldy had easement rights over Storage Center's property.

### 3. Damages

Based on our conclusion that the master erred in determining Gooldy had easement rights over Storage Center's property, we find the master also erred in awarding damages arising from Storage Center's conduct. As a result, the master's damages awards are reversed.

## CONCLUSION

We hold the master erred in finding Gooldy had easement rights over a road on Storage Center's property and awarding Gooldy damages. The master's order is therefore

**REVERSED.**

HUFF, and WILLIAMS, JJ., concur.